## NATIONAL SURETY CO. v. FIRST STATE BANK OF HAWLEY. (Nos. 501–4027.)*

(Commission of Appeals of Texas, Section B. May 20, 1925.)

**1. Insurance ⬉495(2) — Insurer held liable for loss of articles outside inner burglar-proof chest of safe only up to· 10 per cent. of face of policy.**

Under burglary policy providing that only 10 per cent. of insurance on contents of ,burglar-proof safe should apply on money and securities outside inner steel burglar-proof chest therein, insured could recover value of lost articles between first burglar-proof door and inner chest only up to 10 per cent. of face of policy.

**2. Costs ⬉42(6)—Costs in all courts taxed against defendant in error, where plaintiff in error tendered amount of Supreme Court judgment before suit.**

Plaintiff in error having tendered to defendant in error, before and after latter filed suit, amount for which Supreme Coùrt rendered judgment on reversing judgment for greater sum, costs in all courts should be taxed against defendant in error.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by the First State Bank of Hawley against the National Surety Company. Judgment for plaintiff affirmed by Court of Civil Appeals (251 S. W. 303), and defendant brings error. Reversed and rendered.

Templeton, Beall, Williams & Worsham, of Dallas,. for plaintiff in error.

Harper, Sturgeon & Lewis and W. B. Lewis, all of Dallas, for defendant in error.

POWELL, P. J. The nature and result of this case have been admirably stated by the Court of Civil Appeals as follows:

"The First State Bank of Hawley brought this suit against the National Surety Company to recover on a burglary policy issued by the National Surety Company, alleging in substance tñat during the life of said policy the appellee bank suffered a loss by burglary, covered by the policy, aggregating $5,178.78, which loss was

─────────────

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Rehearing denied June 27, 1925.

made up of cash, Liberty bonds, etc., itemized, and belonging to the appellee bank, one item of the amount sued for of $1,922.61 representing Liberty bonds and war saving stamps belonging to customers of the bank, and placed in the bank on terms stated, and contained inside a Mosler safe vault, and inside that part and inner chest thereof which, by the terms of the policy, make appellant company liable for the full value of the loss sustained.

"The National Surety Company answered that the policy sued on contained a provision, in effect, that 10 per cent. of the policy and no more could be recovered in case the property lost was not contained in the inner steel burglar-proof chest contained in the safe, and that 10 per cent. only could be recovered for loss from any safe containing a steel burglar-proof chest, unless the loss is effected from within the said chest after both forcible entry into the safe, and forcible entry into the chest; that the safe covered by the policy contained within the burglar-proof vault an inner steel burglar-proof chest which was not broken into, and that all of the property lost by the appellee bank was situated outside of such inner steel burglar-proof chest, and for that reason the bank would be entitled to recover on the policy the property damage and ten per cent. on the $8,000 policy, which amounts aggregate $1,566.10, payment of which amount the appellant company tendered.

"The court submitted the case to the jury on the one issue as to whether or not the money and securities belonging to the bank were taken from the inner steel burglar-proof chest. The surety company objected to the charge on the ground that there was no issue of fact to submit to the jury, and the court should instruct the jury in its favor, and submitted a general charge to that effect.

"The jury answered the submitted issue in the affirmative, and the court entered judgment for the bank for $3,254.72, being the amount sued for, less the $1,922.61 representing the customers' Liberty bonds and war saving stamps.

"Appellant, under its three propositions, contends that the undisputed evidence showing there was in the safe an inner steel burglar-proof chest, and that nothing was taken from this chest by the burglars, there was no issue of fact to be submitted to the jury, and the court should have instructed the verdict in appellant's favor, except as to the property damage and ten per cent. of the policy as admitted and tendered by appellant.

"The provision in the policy relied on by appellant reads:

"'No. 10. Ten per cent. and no more of the amount of insurance attaching specifically on contents of any safe containing an inner steel burglar-proof chest shall automatically apply, if the safe is burglar-proof, on money and securities in said safe outside of its inner chest, and if the safe is fireproof only, then said ten per cent. and no more shall apply only on securities, silver and subsidiary coin in the said safe outside of its inner chest.' "

The Court of Civil Appeals, upon consideration of the case, affirmed the judgment of the district court. See 251 S. W. 303.

The specifications of the safe insured in this suit are found in the policy. In the first place, it is stated that the "outer door" is "fireproof" and that it is 4½ inches thick. It is then stated that the safe has "a middle burglar-proof door inclosing chest door," and that the thickness of this middle door is two inches. Still further it is shown that "there is in the safe a steel burglar-proof chest locked by a combination lock," and that the chest door is 2½ inches thick.

[1] The safe had two compartments which were burglar-proof. One was the larger vault surrounding the "inner" chest. Before full recovery could be had under this policy, as shown by clause 10 already quoted, the lost articles known as valuables must have been contained in the "inner steel burglar-proof chest." If it had been intended that the policy should cover articles in the larger burglar-proof vault, there was no necessity to use the word "inner." The policy showed conclusively that there were two burglar-proof compartments, and the word "inner" was used advisedly and for a purpose. As to what it referred there can be no doubt. The two officers of the bank admitted that what they kept calling the "cash box" was in fact the "inner chest" referred to in the specifications in the policy. There were no other witnesses. On this point, Vice President Winter testified:

"It is also stated that there is in the safe a steel burglar-proof chest locked by a combination lock. That is the answer contained in the policy. That is what I have been calling the cash box."

Cashier Camp of the defendant bank testified upon this point as follows:

"This safe that was in the bank had at the bottom and near the center of the safe a steel-bound box, cash box; what I term the cash box had a combination lock. I judge the door to the cash box was 2½ inches thick. As to whether or not what I term the cash box was entirely inclosed in steel, it was on the front and back. I don't know about the sides; as far as I know it was steel bound. In the policy we sue on, under the head of 'Schedule,' this safe is described as a Mosler safe No. 189900, and fire-proof. Under subdivision D, in answer to the question as to the thickness of the outer so-called burglar-proof door, exclusive of bolt work, the answer is 4½ inches. That is correct. In answer to question E, if safe has a middle burglar-proof door inclosing chest door, the thickness exclusive of bolt work, the answer is 2 inches. That answer refers to this door here (indicating on sketch). That is the door to the inner steel chest that had a burglar-proof lock, a time lock—rather a combination lock and time-lock. In this schedule in the policy in answer to subdivision F, there is in the safe a steel burglar-proof chest locked by a combination lock, the answer is yes. That is what I term the cash box. In other words, there is just one chest or box, whatever it may be called, inside that would respond to that question. The door on that is about 2½ inches. * * * No

moneys or securities were taken by the burglars from the inner compartment which I call the cash box, but were taken from the large compartment inside the safe and above what I call the cash box."

Under the terms of this policy, the company was liable for the value of articles taken from the inner chest, but only for value up to 10 per cent. of the face of the policy on articles taken from other portions of the safe. The insurance company had a right to insert this clause. It is more difficult for a burglar to go through three locks than two. It was an additional protection to the company. On the other hand, the bank is charged with notice of what the policy contains. It should have known that it had full protection on the articles only which it placed in the "inner" chest. If it had so many valuables that it needed more room in its inner chest, which was not made to appear, the bank should have built a larger chest of that kind in its safe. At any rate, it should have filled its inner chest, as far as possible, with its most valuable belongings.

Furthermore, the 10 per cent. clause would be absolutely meaningless, under the construction contended for by the bank, except upon the theory that valuables would be kept in the air space between the fireproof door and the first burglar-proof door. In other words, the bank seems to contend that it could recover full value for everything taken from inside of the first burglar-proof door, and that the 10 per cent. clause would apply only to what was taken from this so-called air space. Under the testimony in this case, it is clear that no one contemplated keeping valuables between these two large doors. No equipment for storing things was there provided. The only reasonable conclusion is that it was in the contemplation of the parties that the more valuable articles and money were to be kept within the "inner chest," and that the lesser valuables and records should be placed in the larger or outer vault.

As parties bind themselves, they must be bound. Under the terms of this policy, the company protected itself with a valid clause. If the bank had complied with it, no loss of valuables would have occurred. The inner chest was not entered.

There is no fact question in this case. The contract is in writing. The evidence shows that only one compartment could have been the inner chest. It was incumbent upon the bank, as plaintiff, to show that the lost articles were within the "inner chest" before making full recovery. The evidence showed they were not so situated, and the bank introduced no proof showing that the inner chest clause was inconsistent with the other provisions of the policy.

The most nearly similar case we have been able to find is from the Supreme Court of California in the case of Bank v. Maryland Casualty Co., 162 Cal. 61, 121 P. 321, Ann. Cas. 1913C, 1170. In that case, the inner chest was situated like the one in the case at bar. As showing the burden which was upon the plaintiff in the California case, we quote from the decision as follows:

"Before one is entitled to recover upon a policy of insurance, it is essential that he bring himself within the express provisions of the policy. While, in the construction of insurance policies, the rule is that doubtful provisions are to be construed in favor of the insured and in aid of his right to recover thereon, the rule is equally well established that, where the terms of the policy are plain and explicit, the court can indulge in no forced construction of the contract to cast a liability upon the insurance company which it has not assumed. The policies which were issued to the plaintiff were not general policies against burglary, but against burglary committed by the use of tools or explosives, not only upon the safe itself, but, if it contained an inner burglar-proof chest, by the use of tools also upon such chest. There can be no question of this, as the policies clearly so declare. Now, as the policies and schedules attached to the complaint show that there was an inner steel burglar-proof chest within the safe, it was necessary for the plaintiff, before it could fix any liability on the defendant under the plain terms of the policies, to show that the entry was made, not only into the safe itself, but also into the inner burglar-proof chest, from which the money was taken, by the use of tools or explosives directly upon that chest."

The trial court should have rendered judgment for $1,566.10, the amount tendered by the company. No other judgment was proper.

[2] Therefore we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and judgment rendered by the Supreme Court in favor of defendant in error and against plaintiff in error for $1,566.10, with interest from its date at the rate of 6 per cent. per annum.

It appearing from the record that the plaintiff in error tendered aforesaid amount to defendant in error prior to and after the filing of suit in the district court, we think it fair and equitable that the costs in all the courts should be taxed against defendant in error. We so recommend.

GREENWOOD and PIERSON, JJ. Judgments of the Court of Civil Appeals and district court both reversed, and judgment rendered here in favor of defendant in error for $1,566.10, with interest from this date; all costs below and all appellate costs to be taxed against defendant in error; all as recommended by the Commission of Appeals.