[No. B070213. Second Dist., Div. Three. Aug. 31, 1994.]

BENITO DiPALMA, Plaintiff and Appellant, v.
NORMAN SELDMAN et al., Defendants and Respondents.

**COUNSEL**

Ira D. Johns for Plaintiff and Appellant.

Wesierski & Zurek, Thomas G. Wianecki and Helen G. Arens for Defendants and Respondents.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant Benito DiPalma (DiPalma) appeals a judgment following a grant of nonsuit in favor of defendants and respondents Norman Seldman (Seldman) and Garcia & Seldman, Inc., a professional corporation (Garcia & Seldman) (sometimes collectively referred to as Seldman).

The essential issue presented is whether the trial court properly granted nonsuit in this legal malpractice action on the ground DiPalma failed to show the judgment in the underlying case was collectible.

A plaintiff who establishes legal malpractice *in prosecuting a claim* must also prove careful management would have resulted in a favorable judgment and collection of same. (*Campbell* v. *Magana* (1960) 184 Cal.App.2d 751, 754 [8 Cal.Rptr. 32].) There is no damage in the absence of these latter elements. (*Ibid.*)

To the extent the alleged malpractice involved Seldman's advising DiPalma to quitclaim certain property to James Bloom (Mr. Bloom) and Marjorie Bloom (collectively, the Blooms), rather than Seldman's failure to enforce the judgment against the Blooms, the issue of the Blooms' solvency was irrelevant to whether DiPalma was damaged by counsel's legal advice.

Collectibility was an issue only to the extent the malpractice involved Seldman's failure to collect on the judgment against the Blooms. In that regard, DiPalma presented substantial evidence the Blooms were solvent during the relevant time.

The judgment therefore is reversed and the matter is remanded for trial.

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to October 1982, DiPalma invested approximately $237,000 with the Blooms, who were engaged in real estate development in Florida. DiPalma retained Seldman because of his concern over certain papers which Mr. Bloom gave him to sign.

Around June 1984, DiPalma entered into a settlement with the Blooms, whereby the Blooms agreed to pay $100,000 in cash and $240,000 in a four-year note, to "be secured by mortgage or mortgages of BLOOM acceptable to DI PALMA." DiPalma never received the mortgages although he obtained a promissory note.

In October 1984, DiPalma was told by Seldman that if he quitclaimed his interest in the Sun Dial Motel (the motel) to the Blooms, he would get his $340,000 all at once. DiPalma agreed and signed the quitclaim deed.

In November 1984, the Blooms refinanced the motel and other property, and obtained the majority of the proceeds, which amounted to $237,000.

In November 1984, DiPalma received two checks totalling $90,900. At that time, DiPalma questioned Seldman about the rest of the money, to which Seldman responded " 'it's coming.' " Thereafter, Seldman reassured DiPalma he was working on it and that DiPalma would receive the money.

In December 1984, Seldman had the settlement entered as a stipulated judgment in the United States District Court for the Central District of California.

Seldman, who is licensed only in California, did not consult a lawyer in Florida about collecting on the judgment until June 1985. Due to a nine-month delay in forwarding the judgment to a Florida attorney to commence collection work on the case, it was not until nearly eleven months after the entry of the judgment in California that the Florida attorney could pursue collection.

On October 25, 1985, DiPalma signed a substitution of attorney after Seldman advised him he could do nothing more for him. For the next three months, DiPalma was represented by William Kent, who obtained an additional $4,000 for DiPalma.

In April 1986, the Blooms filed for bankruptcy. DiPalma was listed as an unsecured judgment creditor and received no money.

In June 1986, DiPalma brought this action against Seldman for legal malpractice and breach of fiduciary duty. DiPalma alleged, inter alia: Seldman negligently advised him to sign a quitclaim deed thereby transferring any rights and interests he had in certain property to the Blooms. In reliance on Seldman's advice, DiPalma signed the quitclaim deed before he obtained payment of the $240,000 note due and owing from the Blooms, thereby losing his interest in the property to the Blooms. DiPalma also alleged Seldman was negligent in failing to timely record the judgment in Florida and otherwise in collecting the sums due pursuant to the terms of the stipulated judgment.

The matter came to a jury trial. At the close of the evidence, Seldman moved for nonsuit on the ground DiPalma had failed to present evidence the judgment against the Blooms could have been collected.

The trial court granted the motion. It "accepted all of [DiPalma's] evidence as correct" and ruled, inter alia, Seldman committed malpractice in the delay in proving up the judgment in Florida, but DiPalma was not damaged thereby because the debt was uncollectible as the Blooms were bankrupt.

DiPalma appealed.[1]

## CONTENTIONS

DiPalma contends: (1) the trial court erred in granting nonsuit because collectibility was not an issue under these facts; (2) if collectibility were a necessary element of his case, the trial court erred in granting nonsuit because there was evidence of collectibility; (3) Seldman was estopped by his conduct from asserting the judgment was uncollectible; and (4) the grant of nonsuit was error as to the cause of action for breach of fiduciary duty because collectibility was not an issue in that cause of action.

## DISCUSSION

1. *Standard of appellate review.*

Because a successful nonsuit motion precludes submission of plaintiff's case to the jury, courts grant motions for nonsuit only under very limited circumstances. (*Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 117 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036].) A trial

---

[1]We construe the timely August 18, 1992, notice of appeal, which purports to appeal from a nonappealable June 19, 1992, minute order granting nonsuit, to refer to the judgment filed July 27, 1992. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 375, p. 377.)

court may not grant a motion for nonsuit if the evidence presented by the plaintiff would support a jury verdict in the plaintiff's favor. (*Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 838 [206 Cal.Rptr. 136, 686 P.2d 656].)

" 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor . . . ." ' [Citations.]" (*Carson* v. *Facilities Development Co.*, *supra*, 36 Cal.3d at pp. 838-839.)

On appeal from a judgment of nonsuit, ". . . the reviewing court is guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff. 'The judgment of the trial court cannot be sustained unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law.' [Citations.]" (*Carson* v. *Facilities Development Co.*, *supra*, 36 Cal.3d at p. 839.)

Although "a judgment of nonsuit must not be reversed if plaintiff's proof raises nothing more than speculation, suspicion or conjecture, reversal is warranted if there is 'some substance to plaintiff's evidence upon which reasonable minds could differ . . . .' [Citations.] Only the grounds specified by the moving party in support of its motion should be considered by the appellate court in reviewing a judgment of nonsuit. [Citations.]" (*Carson* v. *Facilities Development Co.*, *supra*, 36 Cal.3d at p. 839.)

2. *The element of collectibility applies only when the legal malpractice consists of mishandling a client's claim.*

"The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations.]" (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]; accord, *Jackson* v. *Johnson* (1992) 5 Cal.App.4th 1350, 1355 [7 Cal.Rptr.2d 482].)

One who establishes malpractice on the part of his or her attorney *in prosecuting a lawsuit* must also prove that careful management of it would

have resulted in a favorable judgment and collection thereof, as there is no damage in the absence of these latter elements. (*Campbell* v. *Magana, supra,* 184 Cal.App.2d at p. 754; see BAJI No. 6.37.5.)

In *Campbell,* the plaintiff filed a personal injury action but defendant attorneys negligently allowed the mandatory five-year period for bringing the case to trial to run. (*Campbell* v. *Magana, supra,* 184 Cal.App.2d at pp. 759-760.) Nonetheless, the plaintiff was not damaged by counsel's malpractice because she had no good cause of action against the defendant in the underlying action. (*Id.,* at p. 763.) Therefore, careful management of the underlying action would not have resulted in recovery of a favorable judgment. (*Id.,* at p. 754.)

However, the element of collectibility does not apply to every legal malpractice action. An attorney's liability, " 'as in other negligence cases, is for all damages directly and proximately caused by his negligence.' " (*Smith* v. *Lewis* (1975) 13 Cal.3d 349, 362 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231], overruled on other grounds by *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) It is only where the alleged malpractice consists of mishandling a client's claim that the plaintiff must show proper prosecution of the matter would have resulted in a favorable judgment and collection thereof.

3. *Grant of nonsuit based on the Blooms' financial status was error insofar as the alleged negligence consisted of Seldman's advising DiPalma to quitclaim the motel to the Blooms.*

DiPalma contends collectibility was not an issue under these facts. He lost his right to recovery because Seldman had him quitclaim his interest in the motel without first obtaining other security.

Seldman urges nonsuit was proper because DiPalma failed to present evidence the judgment was collectible from the Blooms in the nearly 11-month period between December 13, 1984, when the stipulated judgment was filed in California, and October 31, 1985, when Seldman signed the substitution and withdrew from the case. Seldman argues DiPalma failed to present any evidence to show even if Seldman had done everything DiPalma contends should have been done, it would have resulted in collection of the judgment on DiPalma's behalf.

As indicated, DiPalma's theory is that Seldman negligently advised him to sign a quitclaim deed transferring any rights and interests he had in the motel to the Blooms. In reliance on Seldman's advice, DiPalma signed the quitclaim deed before he obtained payment of the $240,000 note due and owing from the Blooms, thereby losing his interest in the property.

Drawing every legitimate inference which may be drawn from the evidence in DiPalma's favor, as is appropriate on reviewing a grant of nonsuit, (*Carson* v. *Facilities Development Co.*, *supra*, 36 Cal.3d at pp. 838-839), DiPalma was damaged by Seldman's advice he quitclaim the motel to the Blooms. Had Seldman not advised DiPalma to convey the property to the Blooms outright, while DiPalma might not have collected any money from the Blooms, at least DiPalma would not have lost his interest in the motel. Therefore, the issue of the Blooms' solvency or lack thereof is irrelevant to whether DiPalma was damaged by Seldman's advice with respect to signing the quitclaim deed.

With respect to the motel, Seldman also argues (1) there was no evidence of damage because DiPalma failed to present any evidence as to the net worth of the property, and (2) he did not address whether the money obtained from the refinancing would have been available during any collection attempts between the judgment date of December 1984 and the date Seldman was relieved as counsel.

As set forth above, Mr. Bloom testified after he and his wife refinanced the Sun Dial Motel and other properties in *November 1984*, they obtained the "majority of the proceeds," which amounted to $237,000. Based thereon, it would appear there was substantial equity in the motel at the time DiPalma executed the quitclaim deed in October 1984. Further, to the extent the malpractice involves Seldman's advice to DiPalma to quitclaim the motel, Seldman's argument DiPalma was required to show the refinancing proceeds were collectible is without merit.

In sum, nonsuit was improper because the evidence at trial did not establish as a matter of law that DiPalma was not damaged by Seldman's advice that he quitclaim his interest in the motel to the Blooms outright.

*4. To the extent the alleged malpractice consisted of Seldman's failure to enforce the judgment, collectibility was an element of the case and DiPalma presented substantial evidence on that issue.*

As explained, collectibility was not an issue with respect to the allegation that Seldman negligently advised Di Palma to quitclaim the motel to the Blooms. However, to the extent the alleged malpractice consisted of Seldman's failure to enforce the stipulated judgment, collectibility was an element of the case. As set forth below, DiPalma presented substantial evidence the underlying judgment was collectible. Therefore, DiPalma also was entitled to go to the jury on his claim Seldman was negligent in failing to collect on the judgment.

### a. *General principles.*

█ The element of collectibility requires a showing of the debtor's solvency. "[W]here a claim is alleged to have been lost by an attorney's negligence, in order to recover more than nominal damages it must be shown that it was a valid subsisting debt, *and that the debtor was solvent.*' [Citation.]" (*Lally* v. *Kuster* (1918) 177 Cal. 783, 788 [171 P. 961], italics added; accord, *Campbell* v. *Magana, supra,* 184 Cal.App.2d at p. 754; *Walker* v. *Porter* (1974) 44 Cal.App.3d 174, 178 [118 Cal.Rptr. 468].) The loss of a collectible judgment "by definition means the lost opportunity to collect a money judgment from a solvent [defendant] and is certainly legally sufficient evidence of actual damage." (*Jackson* v. *Johnson, supra,* 5 Cal.App.4th at p. 1369 (dis. opn. of Johnson, J.).)

### b. *Substantial evidence re the Blooms' solvency during the relevant time.*

█ Mr. Bloom testified that in *October or November of 1984,* he and his wife sold their interest in a property known as Ellis Road, Phase One, and carried back a $700,000 mortgage. In light of this testimony, a jury reasonably could conclude this asset held by the Blooms was available to satisfy the judgment filed *December 13, 1984.*

In this regard, Seldman contends "the $700,000 loan . . . that Bloom carried back was for a property sold in October of *1984.* Again, this is *not* evidence of assets, net worth, nor collectibility." Seldman's arguments fail. The $700,000 loan was carried back by the Blooms just weeks before the judgment date of December 13, 1984, supporting an inference the asset was available to DiPalma at the relevant time. Further, Seldman's assertion the $700,000 loan carried back by the Blooms was not evidence of assets, net worth or collectibility is meritless.

In addition, in *November 1984,* the Blooms obtained the bulk of $237,000 in refinancing proceeds from the motel and other properties.

Mr. Bloom also testified that *at the end of 1984,* the Blooms had "equity, that is, an ownership interest in . . . 30 to 40 properties over and above the debts or loans against those properties[.]" Further, *at the end of 1984,* the Blooms had 12 to 18 projects in varying stages of construction, including warehouses, a shopping center, and a 100-unit apartment complex. Mr. Bloom also stated they had some equity in each of those properties because lenders do not lend on projects unless the developer had some equity in the property.

Further, Mr. Bloom testified that *in 1985* the Blooms were the sole owners of a restaurant, the Blueberry Muffin, which was auctioned off in bankruptcy court in 1986 for $310,000. That auction yielded about $30,000, after the underlying mortgages of $280,000 were satisfied. Drawing every legitimate inference which may be drawn from the evidence in DiPalma's favor (*Carson* v. *Facilities Development Co., supra,* 36 Cal.3d at pp. 838-839), because the $310,000 bankruptcy sale price in 1986 was the product of a distress sale, a trier of fact reasonably could conclude that a year earlier, the restaurant was worth a significantly greater amount, and that DiPalma could have recovered substantially more than $30,000 from this asset in 1985.

With respect to the restaurant, Seldman contends DiPalma "has failed to show any evidence that he would have had a mortgage and any sort of priority as to other creditors relative to [the bankruptcy court] sale and that he stood to collect any amount" of the $30,000 which was yielded in the sale. The argument is devoid of merit. The issue is whether, *during 1985,* the Blooms had equity in the restaurant which was available to satisfy the judgment, not whether Di Palma could have shared in the proceeds of the 1986 bankruptcy sale.

In view of all the above, "a complexion of some solvency is suggested." (*Walker* v. *Porter, supra,* 44 Cal.App.3d at p. 178.) There was substantial evidence the Blooms had assets available to satisfy the December 13, 1984 judgment, or some portion thereof. Therefore, the trial court erred in granting nonsuit on the ground the judgment was uncollectible between December 13, 1984, when the stipulated judgment was filed in California, and October 31, 1985, when Seldman substituted out of the case.

*5. Seldman failed to establish grounds for nonsuit on breach of fiduciary duty claim.*

■ Seldman contends nonsuit was proper on the cause of action for breach of fiduciary duty because there was no evidence of any money that Seldman could have collected on behalf of DiPalma.

As indicated, the trial court granted nonsuit on the ground the underlying judgment was uncollectible. Further, only the grounds specified by the moving party in support of its motion should be considered by the appellate court in reviewing a judgment of nonsuit. (*Carson* v. *Facilities Development Co., supra,* 36 Cal.3d at p. 839.)

As discussed above to the extent collectibility was relevant, DiPalma presented substantial evidence the judgment was collectible. Therefore, the

trial court also erred in granting nonsuit on the claim for breach of fiduciary duty.

It is unnecessary to address the remaining arguments of the parties.

DISPOSITION

The judgment is reversed and the matter is remanded for trial. DiPalma to recover costs on appeal.

Croskey, J., and Kitching, J., concurred.

Respondents' petition for review by the Supreme Court was denied November 16, 1994.