Filed 4/16/14  Salerno v. Girardi & Keese CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| RICHARD SALERNO, et al.,<br><br>　　Plaintiffs and Appellants,<br><br>　　v.<br><br>GIRARDI & KEESE,<br><br>　　Defendant and Respondent. | B250050<br><br>(Los Angeles County Super. Ct.<br> No. BC437448) |


APPEAL from a judgment of the Superior Court of Los Angeles, Frederick C. Shaller, Judge. Affirmed.

Law Offices of Terence J. Mix and Terence J. Mix for Plaintiffs and Appellants.

Law Offices of Martin N. Buchanan, Martin N. Buchanan; Baker Keener & Nahra LLP, and Philip A. Baker for Defendant and Respondent.


_____

Represented by the law firm of Girardi and Keese (Girardi), Richard Salerno[1] filed a personal injury action against Thomas Fountain, alleging injuries suffered in a motorcycle accident. Girardi's motion to withdraw as counsel was granted before trial. Richard's attempt to substitute in new counsel failed when the trial court refused to grant a continuance to allow counsel to prepare with new expert witnesses. Richard proceeded to trial without an attorney. A defense verdict was rendered, along with an award of costs against Richard in the amount of $157,386.

Richard and his wife, Connie Salerno, then brought this action for legal malpractice and breach of fiduciary duty against Girardi, which resulted in two trials. In the first trial (Trial I), Connie's action was dismissed on Girardi's motion for nonsuit. A mistrial was declared as to Richard's action during jury deliberations in Trial I. The second trial (Trial II) ended when the trial court granted Girardi's motion of nonsuit after finding Richard had failed to establish the element of collectibility in the underlying personal injury action.

The Salernos appeal from the judgment in favor of Girardi. They raise three issues on appeal: (1) because there was evidence of insurance coverage in the amount of $1.25 million in the underlying action, the trial court erred in granting Girardi's motion for nonsuit in Trial II; (2) the court erred in ordering a mistrial in Trial I because a complete verdict had been rendered; and (3) the court erred in granting nonsuit as to Connie. We affirm.

---

[1] When appropriate, we refer to the Salernos by first name for purpose of clarity. No disrespect is intended.

# DISCUSSION

## I

Richard argues the trial court erred in granting Girardi's motion for nonsuit in Trial II on the issue of collectibility. Richard contends the record contains substantial evidence that Fountain had insurance coverage. He further argues he established other damages resulting from Girardi's negligence and breach of fiduciary duty, because Richard was ordered to pay costs of $157,386 in the underlying action after a defense verdict was returned.

## The Record is Insufficient to Overcome the Presumption the Judgment is Correct as to Trial II

The record on appeal presented by the Salernos relating to Trial II does not include a reporter's transcript or suitable substitute such as a settled statement of any pretrial rulings, opening statements, or the testimony of any witness other than David Lira, the Girardi lawyer charged with managing the underlying personal injury action. The record also includes a transcript of impeaching portions of Lira's deposition, and the trial court's order granting Girardi's motion for nonsuit on the issue of collectibility of the underlying judgment.

Prior to briefing in this appeal, this court issued an order requiring the parties "to brief the issue of whether the Salernos' failure to provide a more complete reporter's transcript or a suitable substitute warrants affirmance based on the inadequacy of the record." The Salernos' opening brief does not address the adequacy of the appellate record. Girardi's respondent's brief argues that failure to designate the entire reporter's transcript of the second trial required affirmance on the basis of an inadequate record, citing *Ritschel v. City of Fountain Valley* (2006) 137 Cal.App.4th 107, 124 (*Ritschel*) ("An appellate court's review of a judgment after the grant of a nonsuit 'must be based on the whole record, not just excerpts chosen by the appellant'"). In the reply brief, the

Salernos argue the partial record is sufficient because the issue of collectibility of the underlying judgment is limited and does not require an exhaustive review of the entirety of the record.

We conclude the record is unquestionably insufficient to demonstrate reversible error under settled California law. "An appellate court begins with the presumption the judgment is correct (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435) and the appellant must prepare a record that adequately establishes the trial court committed prejudicial error. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296; *Rancho Santa Fe Assn. v. Dolan–King* (2004) 115 Cal.App.4th 28, 46.)" (*Ritschel*, *supra*, 137 Cal.App.4th at p. 122.)

"In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided. [Citations.] [¶] The reason for this follows from the cardinal rule of appellate review that a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented.'" (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127.) This general principle of appellate practice is an aspect of the constitutional doctrine of reversible error. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.)" (*Foust v. San Jose Const. Co., Inc.* (2011) 198 Cal.App.4th 181, 186-187.)

The Salernos' contention that the very limited reporter's transcript presented is sufficient to review the issue of whether nonsuit was properly granted in Trial II on the issue of collectibility overlooks the possibility that other matters may have been presented to the trial court, which would also justify judgment for Girardi. This court cannot make a determination if the order granting nonsuit was prejudicial, as required by article VI, section 13 of the California Constitution, without a complete record of the

4

balance of the proceedings in Trial II, including all the testimony. Because there are other potential issues which could compel judgment for Girardi, we must presume that those other factors are present, and affirm the judgment on that basis. (*Foust v. San Jose Const. Co., Inc.*, *supra*, 198 Cal.App.4th at pp. 186-187; *Bennett v. McCall*, *supra*, 19 Cal.App.4th at p. 127.)

**Assuming the Record is Sufficient, Nonsuit was Properly Granted**

Because of the somewhat tortured nature of this litigation, we conclude it is best, in the alternative, to address the merits of the contention that nonsuit was improperly granted on the issue of collectibility. We hold the trial court properly granted the motion for nonsuit.

*a. Standard of Review*

"'In determining whether a nonsuit was properly granted the reviewing court must resolve every conflict in testimony in favor of the plaintiff and at the same time indulge in every presumption and inference which could reasonably support the plaintiff's case. [Citation.] The rules governing the granting of a nonsuit, however, do not relieve the plaintiff of the burden of establishing the elements of his case. The plaintiff must therefore produce evidence which supports a logical inference in his favor and which does more than merely permit speculation or conjecture. [Citation.] If a plaintiff produces no substantial evidence of liability or proximate cause then the granting of a nonsuit is proper. [Citation.]' (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402.)" (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1209.)

*b. The Requirement of Proving Collectibility*

"It is well accepted that 'one who establishes malpractice on the part of his attorney in prosecuting . . . a lawsuit *must also prove* that careful management of it would have resulted in recovery of a favorable judgment *and collection of same . . . .*' (*Campbell v. Magana* (1960) 184 Cal.App.2d 751, 754, italics added; *Garretson v. Harold I. Miller* (2002) 99 Cal.App.4th 563, 568–569 (*Garretson* ).)" (*Hecht, Solberg, Robinson, Goldberg & Bagley v. Superior Court* (2006) 137 Cal.App.4th 579, 583 (*Hecht*).) Collectibility does not apply to every legal malpractice action. "It is only where the alleged malpractice consists of mishandling a client's claim that the plaintiff must show proper prosecution of the matter would have resulted in a favorable judgment and collection thereof." (*DiPalma v. Seldman* (1994) 27 Cal.App.4th 1499, 1507.) "The plaintiff has to show both that the loss of a valid claim was proximately caused by defendant attorney's negligence, and that such a loss was measurable in damages. (*Ibid.*) In this sense, collectibility of the hypothetical underlying judgment against the named defendant is a component of the plaintiff's current case relating to damages, as caused by the current negligent attorney defendant, and is a fact-intensive inquiry." (*Hecht*, *supra*, at p. 591.)

*c. Analysis*

The limited record presented by Richard contains no evidence Fountain had the ability to pay a judgment in any amount. Richard relies only on the testimony of Lira to establish insurance coverage in the underlying personal injury action. Lira testified he was the Girardi attorney responsible for supervising work on Richard's personal injury action, which had been referred to Girardi by attorney Larry Longo. Girardi initially declined to represent Richard. Lira testified he was told by Longo there was a $250,000 insurance policy, but due to the injuries, it would be easy "to pop the policy" and settle for the policy limits. Girardi agreed to represent Richard in the hope of obtaining

6

whatever was available to him, including the prospect of the $250,000 in insurance. After the lawsuit was filed, Vince Carter, the attorney handling the litigation for Girardi, told Lira there was an addition $1 million insurance coverage. Girardi made a statutory offer to compromise for policy limits to settle the action, but did not receive a response. The trial court expressly ruled that Lira's testimony regarding the existence of insurance coverage was not admitted for the truth of the matter asserted, but only to explain the mental process of Girardi in proceeding with the case and filing the offer to compromise for the policy limits.

Lira had no personal knowledge of insurance coverage. According to the argument on the motion for nonsuit, no insurance policy was offered in evidence in Trial II, nor did Fountain testify to coverage or ability to pay a judgment. The statement by Longo that there was a $250,000 policy was an out of court statement, which the trial court properly ruled was not admissible for the truth of the matter asserted. (Evid. Code, § 1200 [hearsay is evidence of a statement made other than by a witness at trial that is offered for the truth of the matter asserted, and except as provided by law, hearsay evidence is inadmissible].) Carter's statement to Lira about the $1 million insurance policy was also not admissible for the truth of the matter asserted, as the record contains no foundation that Carter spoke with personal knowledge, and Lira merely repeated what Carter had told him. To the extent Richard argues Carter relied on unsworn answers to interrogatories in Richard's personal injury action to show the existence of insurance, Lira's knowledge would have been based on multiple levels of hearsay and was unquestionably inadmissible for its truth. Finally, the out of court statements regarding insurance coverage were not admissible as statements of the declarant's existing mental state, because the mental state of the declarants— Longo, Fountain, and Carter— was "not itself an issue in the action." (Evid. Code, § 1250, subd. (a) (1).)

While it is true Girardi made an offer to compromise for policy limits, that offer does not constitute proof that Fountain was insured, or in what amount. No response was received to the offer, so there was no confirmation of the existence of insurance.

Finally, as the trial court accurately pointed out, without proof of the actual existence of insurance in a particular amount, there was no way for the jury to competently assess the issue of collectibility. Had the action gone to verdict in favor of Richard, the trial court realized any determination of the collectable amount of damages would have been based only on speculation, and any verdict would have necessarily been set aside. Given this consideration, there was no basis for the case to go forward, and nonsuit was properly granted.

The Salernos further argue that Richard was damaged by the cost award of $157,386 against him after the defense verdict in the underlying trial against Fountain. However, the Salernos never asserted the cost bill as a basis for liability in the trial court in opposition to the motion for nonsuit, thereby forfeiting the issue. (*Martin v. PacifiCare of California* (2011) 198 Cal.App.4th 1390, 1409; *Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874.) The first time the Salernos argued that the award of costs was sufficient evidence of damages to defeat nonsuit was in their motion for reconsideration of the order granting nonsuit. The trial court properly denied reconsideration on various grounds, all of which are immune from attack. The Salernos' motion for reconsideration did not rely on newly discovered evidence or new law, and according to the trial court, the issue of the cost award as damages was never raised before the jury, and there was no proof of the cost award at trial. Denial of reconsideration was not an abuse of discretion.

## II

The Salernos next argue there was a valid and complete verdict in Trial I, even though polling of the jury was not completed, because more than nine jurors agreed on a verdict, under the reasoning in *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247 (*Jeld-Wen*). In addition, the Salernos dispute each of the bases relied upon by the trial court in determining that a mistrial was necessary.

**Background**

The Salernos did not include a reporter's testimony of any aspect of Trial I in the appellate record, except for proceedings that took place after the jury commenced deliberations. We summarize the four transcripts below.

*a. Transcript dated December 23, 2011*

According to the clerk's transcript, deliberations commenced December 22, 2011. The next day, the jury addressed several questions to the trial court relating to language used in the special verdict form, asking for an explanation of the word "harm," and the meaning of "but for" and "fiduciary." The parties agreed the jury should be referred to instructions that had already been given (CACI Nos. 601 and 603) in regard to the definition of "harm" and "but for."

The jury's request for an explanation of the meaning of "fiduciary" proved more troubling to the trial court, as no instructions were given on breach of fiduciary duty, the second cause of action in the Salernos' complaint. Richard had included CACI No. 4106 ("Breach of Fiduciary Duty by Attorney—Essential Factual Elements") in his list of requested instructions, but the final instruction package (prepared by Girardi) did not include any definition of fiduciary, and Richard had not objected when the instructions were given. The trial court noted that Question No. 5 in the verdict form asked if Richard would have suffered harm but for negligence by Girardi, and Question No. 6 asked if Girardi breached its fiduciary duty to Richard. The court decided to answer the jury's inquires other than providing the definition of fiduciary. The court answered the jury's questions in writing, specifically advising the jury that the meaning of fiduciary "refers to question number 6. You may not answer question 6 until you have answered question number 5." According to the minute order, the jury was ordered to return on December 27, 2011. The court left open, for further consideration after the Christmas break,

9

whether it had a responsibility to instruct on a critical issue when the instruction was not given due to an attorney's excusable neglect.

### b. Transcript dated December 27, 2011

When proceedings resumed on December 27, 2011, the trial court learned a juror was injured over the break in proceedings, requiring replacement with an alternate juror. The jury was instructed to begin deliberations anew with a new verdict form. Girardi had served an email copy of a motion for directed verdict or mistrial on counsel for Richard the night before December 27, 2011. The court denied Girardi's motion as being untimely and based on inadequate notice. On the issue of the lack of instructions on fiduciary duty, the court determined there was fault on both sides for not giving the instruction, and agreed to Richard's request that CACI No. 4100 ("'Fiduciary Duty' Explained") be given over Girardi's objection that the proposed instruction is not applicable to attorneys. The court noted that the jury was beginning deliberations anew, and the jury had been told the previous court day not to address Question No. 6 until answering Question No. 5.

However, before the trial court could provide the instruction on fiduciary duty, the jury asked whether its award of damages could be based on the average found by each juror. The parties and court agreed the jury was not permitted to average the damages, as already explained in CACI No. 5009, which was included in the original set of instructions provided to the jury. The court noted that if the jury was discussing damages, it had answered Question No. 6 before it received the instruction defining fiduciary duty. Girardi again argued that CACI No. 4100 does not apply to breach of fiduciary duty by an attorney and CACI No. 4106 is the correct instruction. In addition, Girardi objected to further instructions because Richard had not argued breach of fiduciary duty at trial, and had not articulated a fiduciary duty that was breached. The court determined it would give CACI No. 4100. Richard suggested the court instruct with CACI 4106 and identify the fiduciary duty as failure to use reasonable diligence.

10

The jury returned to the courtroom.  The court instructed the jury not to average the damages.  The court also told the jury it assumed the jury had answered Question No. 6 regarding breach of fiduciary duty, but the answer may not be correct, so the court read the modified version of CACI No. 4106 requested by Richard and instructed the jury to consider if the instruction changed the answer to Question No. 6.

The jury later indicated it had reached a verdict.  The court examined the verdict form and noted all questions had not been answered by nine members of the jury.  In Question No. 1, the jury found Fountain had been negligent and in Question No. 2, that Fountain's negligence was a substantial factor in causing harm to Richard.  In Question No. 3, which asked the jury to apportion negligence between Fountain and Richard, the verdict form indicated the following;  eight jurors found Richard 80 percent at fault and two found Fountain 20 percent at fault; one juror found Richard and Fountain each 50 percent at fault; and one juror found Richard 49 percent at fault and Fountain 51 percent at fault.  The jury was ordered to resume deliberations and not to "consider any question beyond question 3 until question 3 is resolved. . . ."

The jury returned again with its verdict, which the clerk began to read.  The special verdict form reflected the following findings:

Question No. 1—Fountain was negligent in the collision with Richard;

Question No. 2—Fountain's negligence was a substantial factor in causing harm to Richard;

Question No. 3—Richard was 60 percent at fault and Fountain was 40 percent at fault;

Question No.4—Girardi was negligent;

Question No. 5—Richard suffered harm as a result of Girardi's negligence;

Question No. 6—Girardi breached its fiduciary duty to Richard;

Question No. 7—Girardi's breach of its fiduciary duty was a substantial factor in causing harm to Richard;

Question No. 8—Richard was entitled to past economic loss of earnings of $250,000 and total past economic damages of $1.5 million.  Future economic lost

11

earnings were $850,00 and medical expenses were $1,326,000. Past non-economic loss including physical pain and mental suffering was $5 million and future noneconomic loss including physical pain and mental suffering was $1 million, for total damages of $10,676,000; and

Question No. 9—among the attorneys for Richard, Girardi was 80 percent at fault and other attorneys were a combined 20 percent responsible.

The trial court held a conference with counsel outside the presence of the jury. The court noted an error in the verdict form in the answer to Question No. 8, because past lost earnings were $250,000 but the verdict reflected total past economic damages of $1.5 million. The parties agreed that the figure should not be more than $250,000, and the jury was instructed to reconvene to correct the error in arithmetic.

After further deliberations, the jury returned for a third time with a verdict. The corrected verdict limited past economic loss to lost earnings of $250,000. The balance of the verdict remained as previously read. The court directed the clerk to poll the jurors. On Question No. 1, the poll was 10-2, with jurors number 5 and 9 voting "no." The clerk began polling on Question No. 2, but when the clerk polled juror number 5, who had voted "no" on Question No. 1, the foreperson referred the court to Question No. 1 which said, "If you answer no, then stop here." The court said the direction to "stop here" was meant for a situation where nine or more jurors voted "no," and it did not mean that individual jurors who voted "no" should stop participating in deliberations. The court explained that if all the jurors did not vote on each issue, then the jury must return and "and you're going to have to do it again." The jury was ordered to return the following morning. Girardi moved for a mistrial on the ground all jurors did not participate and there was not a jury of 12 people deliberating. The court agreed to address the problem the following morning.

*c. Transcript dated December 28, 2011*

The court heard argument on Girardi's motion for mistrial. Girardi argued there was misconduct because the jury did not answer the questions in order and all 12 jurors did not participate in deliberations. The jury first returned a verdict without nine votes, then presented an incorrect verdict on past loss of earnings, followed by the disclosure when the jury returned for the third time that only 10 jurors had voted after Question No. 1, destroying the deliberative process. Richard argued the jury had not committed misconduct but merely misunderstood the instructions. The problem with a lack of instructions on fiduciary duty was attributable to both parties, and was not the fault of the jury. Girardi responded that excluding the two dissenting jurors resulted in an extraordinarily large verdict. He predicted the jury would return quickly with a "rubber stamp" of its prior verdict.

The court granted the motion for mistrial after a detailed review of the history of the case, focusing on the following factors. The case was submitted to the jury with no instructions on fiduciary duty. The court agreed to give an instruction, but the instruction identified a breach different from those alleged in the complaint—failure to exercise reasonable diligence. The instruction is insufficient as a matter of law, and it is impossible to tell if the breach of fiduciary duty verdict affected the damages as a whole. Another problem is the lack of any evidence by Richard that the medical damages are reasonable. In response, Richard argued the lack of evidence was not an issue because the medical bills were paid, but the court pointed out that the jury received no evidence of that fact.

The court then turned to problems with the jury. The jury overlooked definitions plainly set forth in the instructions. The jury was told not to answer Question No. 6 until it answered Question No. 5, but the jurors answered Question No. 6 without any instructions on breach of fiduciary duty. The jury asked the court about averaging the damages, despite a clear instruction already given not to do so. On the second verdict form, it is apparent two jurors did not continue to vote, because on Question No. 3 there were only ten votes shown, and moreover, only eight jurors agreed on the percentage of liability between Richard and the other driver. Even though only eight jurors agreed on

13

the percentages of fault in Question No. 3, they proceeded to answer Question Nos. 4-9. The court could not determine how the jury arrived at an extra $1.25 million in past economic loss. The court pointed out there was a very short time between the first and second attempts to return a verdict, and two jurors did not participate in whatever deliberation process took place in that time.

The trial court concluded these problems could not be corrected with this jury and there was no possibility of a fair verdict. The various verdict forms were made part of the record on appeal by the court.

### d. Transcript dated January 27, 2012

The court heard oral argument on Richard's written motion to set aside the mistrial order and have the verdict reinstated. Richard argued he had inadequate time to respond at the time mistrial was granted. He further argued there was no jury misconduct. The last signed verdict was agreed to by at least nine jurors and was valid, even without the deliberation of the two jurors who voted "no" on Question No. 1. Girardi's failure to object to the lack of complete polling of the jury forfeits any claim that the verdict was incomplete under the holding in *Jeld-Wen*, *supra*, 46 Cal.4th 247. Although all 12 jurors should participate in deliberations, the failure to do so does not mean the verdict is invalid. The jury was told not to answer Question No. 6 until Question No. 5 was answered, but the jury was not directed to wait for further instructions on breach of fiduciary duty before addressing Question No. 6. Even if the fiduciary duty instruction was wrong, it had no influence on the negligence verdict, and there is no reason to set aside the negligence findings.

Girardi opposed the motion, arguing the jury had the instructions in the jury room but ignored them. The jury reached a verdict on breach of fiduciary duty without an instruction on the issue, and the instruction ultimately given defined negligence, not breach of fiduciary duty. The question about averaging damages was "ridiculous" after the jury had been expressly instructed not to do so. The jury attempted to return a verdict

14

based only on eight votes. The jury did not re-deliberate as directed on December 28, 2011.

Richard responded and Girardi replied. The trial court denied the motion. The court disagreed that *Jeld-Wen* was controlling, because polling of the jury was stopped by the court when the court concluded all jurors had not deliberated and voted. There was no verdict because polling was never completed.

### Standard of Review

"The fundamental idea of a mistrial is that some *error* has occurred which is too serious to be corrected, and therefore the trial must be terminated, so that proceedings can begin again. . . . [¶] Because the core idea of a mistrial is the presence of error that cannot be corrected, it is natural that, generally speaking, the standard of review will be abuse of discretion. That is, the trial judge, present on the scene, is obviously the best judge of whether any error was so *prejudicial to one of the parties* as to warrant scrapping proceedings up to that point. 'Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.' (*People v. Haskett* (1982) 30 Cal.3d 841, 854, citing *Illinois v. Somerville* (1973) 410 U.S. 458, 461–462, 93 S.Ct. 1066, 35 L.Ed.2d 425.)" (*Blumenthal v. Superior Court* (2006) 137 Cal.App.4th 672, 678.) One court has "detected" that our Supreme Court's jurisprudence reflects "a substantive preference" against granting motions for mistrial, citing opinions in criminal cases. (*Id.* at pp. 678-679.)

### Analysis

   a. *Adequacy of the Record*

15

The record on appeal is inadequate to support Richard's argument that a completed verdict was returned as in Trial I. Other than what occurred during the jury deliberation phase of trial, this court has no record of trial proceedings. Without a complete record of all trial proceedings—including pretrial motions, opening statements, witness testimony, discussion of jury instructions, and the arguments of counsel to the jury—we cannot assess whether the trial court abused its discretion by declaring a mistrial. The court granted a mistrial in part based on the erroneous instruction on breach of fiduciary duty, and without a record of the evidence presented on that cause of action, as well as the cause of action for negligence, we are not in a position to question the court's determination that the error created incurable prejudice to Girardi.

### b. The Contention Fails on the Merits

Even based on the inadequate record presented, Richard's contentions that the trial court abused its discretion in granting a mistrial and a complete verdict was rendered both fail. Before granting the mistrial, the trial court identified repeated failures of the jury to read and comprehend the clear instructions of the court. The court stated that the jury at one point attempted to return a verdict supported only by eight jurors, and at another point the jury arrived at a verdict for past economic damages of $1.5 million, when the only evidence showed lost earnings of $250,000. The instruction on breach of fiduciary duty, which defined fiduciary duty only in terms of general negligence, was incorrect as a matter of law because a breach of fiduciary duty is a tort distinct from professional negligence. (*Slovensky v. Friedman* (2006) 142 Cal.App.4th 1518, 1534; *Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.) The trial court could reasonably conclude that erroneous instruction may have influenced the jury's calculation of damages. During polling, it was disclosed that two jurors were excluded from deliberations after voting "no" on Question No. 1., rather than continuing to deliberate as a jury of 12, as contemplated by the law. Given this abysmal record, the trial court's determination that

16

it had no confidence a fair verdict would result cannot be characterized as an abuse of discretion.

Richard argues *Jeld-Wen*, *supra*, 46 Cal.4th 247, establishes that the jury's final verdict was complete and mistrial was therefore improperly granted. We disagree because the issue in *Jeld-Wen* bears no similarity to the instant case. In *Jeld-Wen*, the trial court polled the jury on its multi-part special verdict favoring the plaintiff, but on one question in the verdict form the court inadvertently failed to obtain an answer from a juror, resulting in only eight jurors affirming their vote on that issue. The verdict was recorded without objection by the defendants. Our Supreme Court interpreted Code of Civil Procedure section 618[2] as creating a rebuttable presumption that if a verdict appears correct, it is complete unless there is an affirmative showing during polling to the contrary. (*Id.* at p. 257.) "It follows that, as here, a juror's mere *silence* at polling, brought about by the trial court's failure to poll the juror on one of multiple special verdict questions, does not constitute an expressed disagreement with the verdict under section 618, and hence that this statute provides no basis under the present circumstances for a court to decline to uphold the verdict as set out in the jury's special verdict form." (*Id.* at p. 259.) Moreover, in the absence of an objection to the polling process, the defendants' forfeited their contention that the failure to poll one juror on one issue in the verdict rendered that portion of the verdict invalid. (*Id.* at p. 262.)

Unlike *Jeld-Wen*, polling in this case was never completed, nor was the verdict ordered recorded as read. The trial court discovered during the polling process that all 12 jurors had not participated in a significant portion of deliberations and did not vote on

---

[2]    Code of Civil Procedure section 618 provides as follows: "When the jury, or three-fourths of them, have agreed upon a verdict, they must be conducted into court and the verdict rendered by their foreperson. The verdict must be in writing, signed by the foreperson, and must be read to the jury by the clerk, and the inquiry made whether it is their verdict. Either party may require the jury to be polled, which is done by the court or clerk, asking each juror if it is the juror's verdict. If upon inquiry or polling, more than one-fourth of the jurors disagree thereto, the jury must be sent out again, but if no disagreement is expressed, the verdict is complete and the jury discharged from the case."

17

any of the questions presented after Question No. 1.  The court's decision to stop the polling process upon discovering all 12 jurors had not deliberated was entirely consistent with California law.  The *Jeld-Wen* court cited *Resch v. Volkswagen of America, Inc.* (1984) 36 Cal.3d 676, 679 (*Resch*), for the proposition "regardless of the jurors' votes on other special verdict questions . . . each juror should participate as to each special verdict submitted."  (*Weld-Jen*, *supra*, 46 Cal.4th at p. 255.)  In *Juarez v. Superior Court* (1982) 31 Cal.3d 759, 768, our Supreme Court held that "if nine identical jurors agree that a party is negligent and that such negligence is the proximate cause of the other party's injuries, special verdicts apportioning damages are valid so long as they command the votes of *any* nine jurors.  To hold otherwise would be to prohibit jurors who dissent on the question of a party's liability from participation in the important remaining issue of allocating responsibility among the parties, *a result that would deny all parties the right to a jury of 12 persons deliberating on all issues*." (Italics added.)  In light of these binding decisions, the trial court acted within its power to control the proceedings by discontinuing the polling process before the verdict was complete and recorded.  Unlike *Jeld-Wen*, there was never a complete verdict in this case and Richard was not entitled to entry of judgment.

## III

Connie contends the trial court erred in granting Girardi's motion for nonsuit against her in Trial I.  Girardi's written motion contended the law firm owed no duty to Connie, and Connie's evidence and testimony were insufficient as a matter of law to establish liability.

A motion for nonsuit requires consideration of the evidence presented by a plaintiff at trial.  Here, we have no reporter's transcript of any testimony in Trial I.  As a result, there is no basis to consider the merits of Connie's contention, as the record is entirely inadequate for meaningful appellate review.  With no record of the evidence presented at trial, we apply the settled rule of law that the judgment is presumed to be

18

correct.  Connie has made no showing of error, or that any error was prejudicial.  (Cal. Const., art. VI, § 13.)

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Girardi & Keese.


KRIEGLER, J.


We concur:


TURNER, P. J.


MINK, J.[*]

---

[*]     Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.