Filed 3/14/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ELLY-JOY SHALOME KAUSHANSKY, | B317069 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC624944) |
| v. | |
| STONECROFT ATTORNEYS, APC et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Theresa M. Traber, Judge.  Affirmed in part and reversed in part.

Law Offices of Edward A. Hoffman and Edward A. Hoffman for Defendants and Appellants.

Medvei Law Group and Sebastian M. Medvei for Plaintiff and Respondent.

————————————————

# INTRODUCTION

Plaintiff and respondent Shalome Kaushansky brought a malpractice action against her former attorney, Stonecroft Attorneys, APC, and Michael Akhidenor (collectively, Stonecroft) for professional negligence, breach of fiduciary duty, and unfair competition. After a bench trial, the court entered judgment in favor of Kaushansky, awarding her total damages of $116,734.29, comprised of $91,734.29 for her professional negligence cause of action and $25,000 for her breach of fiduciary duty cause of action. We reverse the professional negligence damages award but otherwise affirm the judgment.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Underlying Action Against the Landlord*

In 2014, Kaushansky retained Stonecroft to represent her in a legal action against her landlord. In their initial meeting, Kaushansky told Stonecroft about the problems that arose during her tenancy. There were multiple water leaks resulting in mold, fires from recurrent electrical problems, a series of faulty water heaters, lack of heat due to a defective heating unit, a gas leak, and dog feces and urine in the hallway. When she complained to the housing authority about these issues, the landlord harassed and retaliated against her. The maintenance staff intentionally spilled toilet cleaner on her carpet, broke down her door to gain access when she was not home, rekeyed the locks, and failed to provide her with a new key for three days. The staff also blocked her car with broken toilets. Kaushansky was forced to take an alternate route to her car every morning due to sexual harassment by the landlord and his staff.

Kaushansky provided to Stonecroft her contemporaneous notes, photographs, and documents of the problems. She was told her case was worth $140,000. She understood this was not a guarantee of recovery but merely an estimate. Kaushansky signed a retainer agreement with Stonecroft on March 26, 2014.

Stonecroft filed a complaint against the landlord on Kaushansky's behalf on July 24, 2014, asserting causes of action for breach of the implied warranty of habitability and negligent maintenance of the premises. From July 2014 to September 2015, Stonecroft did almost nothing to advance Kaushansky's case. It failed to propound or respond to discovery. It did not appear for scheduled hearings. It failed to coordinate dates for Kaushansky's deposition with opposing counsel despite Kaushansky's stated willingness to attend. Stonecroft also stipulated to strike claims for punitive damages and attorney fees from the complaint without advising Kaushansky.

On September 4, 2015, less than two weeks before the discovery cut-off date and six weeks before trial was scheduled to begin, Stonecroft persuaded Kaushansky to sign a substitution of attorney form. Unable to retain other counsel, Kaushansky settled the case against her landlord for $2,500.

B.    *The Malpractice Action*

On June 24, 2016, Kaushansky brought suit against Stonecroft, alleging causes of action for professional negligence, breach of fiduciary duty, and unfair competition under Business and Professions Code section 17200.

The court conducted a bench trial over several days in March and April of 2021. Kaushansky testified about the tenancy issues and her interactions with Stonecroft as described

3

above. She provided expert testimony regarding the deficiencies in Stonecroft's representation of Kaushansky, including that it failed to propound or timely respond to discovery, failed to allege all the causes of action available to Kaushansky, and violated its fiduciary duty to Kaushansky at the time it withdrew from the representation.

Akhidenor, the sole principal of Stonecroft, also testified. He recalled Kaushansky brought three issues to his attention at their first meeting: a faulty doorknob, a stain in the carpet, and toilets blocking her vehicle. Later, after Kaushansky agreed to retain him, she told him there were plumbing and other issues during her tenancy but failed to elaborate or provide evidence of these issues.

It was Akhidenor's position at trial that Kaushansky prevented him from adequately litigating her case. He asserted Kaushansky failed to bring any evidence to him, including a copy of her lease or written requests for repairs, or the identities of other tenants with similar issues, during the course of the litigation. He stated he was required to get approval from her for everything he did in the case, including propounding discovery, but she was not often available due to her work. As a result, he drafted discovery but never sent it out because she had not approved it. He testified he experienced the same obstacles with scheduling her deposition and responding to discovery. He further testified it was his trial strategy to wait until the defense had completed its discovery before conducting his own discovery to keep costs down. Later in his testimony, Akhidenor acknowledged Kaushansky provided him with work requests and other evidence of her issues with the landlord.

C.    *The Statement of Decision*

The court issued a tentative statement of decision in favor of Kaushansky, finding she was entitled to recover $91,734.29 ($94,234.29 minus the $2,500 settlement) in damages on the professional negligence claim and $25,000 on the breach of fiduciary duty claim for a total damages award of $116,734.29. Stonecroft filed extensive objections to the proposed statement of decision, arguing the trial court in the underlying landlord-tenant case continued the trial date and thus Kaushansky had an additional five months to amend her complaint, conduct discovery, and hire new counsel. Under these circumstances, Stonecroft argued its failures were "not fatal" to Kaushansky's case and that the trial court failed to resolve how the breaches of duty caused any damages.

Stonecroft further challenged the merits of Kaushansky's case against her landlord, arguing Kaushansky did not prove she would have received a better award or settlement. According to Stonecroft, Kaushansky settled her case for $2,500, and it was speculative to assume she would have received more. Stonecroft also contended the court failed to apply the proper legal standards in reaching its decision, improperly assumed Stonecroft could not have withdrawn without a substitution of attorney, erred in concluding Stonecroft should have pleaded statutory claims against the landlord, and erred in concluding Stonecroft should have provided unverified responses to the discovery requests. It also argued Kaushansky's attorney fee recovery was capped at $500 pursuant to the terms of her lease.

After considering the parties' objections, the court issued a final statement of decision on September 10, 2021, reaching substantially the same conclusions. The court found Stonecroft

5

committed professional negligence by failing to plead all applicable causes of action, failing to propound discovery, and failing to provide verified discovery responses or coordinate Kaushansky's availability for deposition. It also found Stonecroft breached its fiduciary duties to Kaushansky by failing to "take[] steps to avoid reasonably foreseeable prejudice" to Kaushansky before withdrawing in violation of the Rules of Professional Conduct, rule 1.16(d).

The trial court found in favor of Stonecroft on the Business and Professions Code section 17200 claim, holding that Kaushansky failed to demonstrate she was entitled to any remedy—injunctive or declaratory relief—available under that statute. It also declined to impose punitive damages on Stonecroft, finding Kaushansky failed to prove by clear and convincing evidence that Stonecroft acted with malice, oppression, or fraud. The court also found Kaushansky failed to prove the landlord's financial position for purposes of punitive damages.

As to the professional negligence cause of action, the court relied on Kaushansky's expert, who testified that Stonecroft's representation of Kaushansky fell below the standard of care of a reasonably competent litigator. First, Stonecroft failed to plead statutory violations under Civil Code sections 789.3 and 1942.4. According to Kausahansky's expert, these statutes allowed for recovery of general or special damages, civil penalties, attorney fees, and punitive damages.[1] The court concluded the failure to

---

[1] Civil Code section 789.3, subdivision (b)(1), in pertinent part, prohibits a landlord from "[p]revent[ing] the tenant from gaining reasonable access to the property by changing the locks

6

plead these causes of action deprived Kaushansky of not only the opportunity to seek additional monetary recovery but also decreased the settlement value of her case.

Second, the trial court found Stonecroft failed to conduct any discovery in the underlying action. The court rejected Akhidenor's testimony that blamed Kaushansky's need for control of the litigation for the failure and his explanation that his strategy was to wait until other discovery was completed to propound discovery. The court determined, "The so-called strategies amount to after-the-fact excuses for a failure to undertake the most basic tasks performed by any reasonable litigator."

Third, the court found Stonecroft failed to respond to discovery propounded by the landlord. The court stated it was "not inclined to accept [Akhidenor's] testimony as accurate or true," finding the evidence did not corroborate Akhidenor's assertions that Kaushansky was uncooperative and unavailable. The evidence instead showed Stonecroft received a six-week extension to respond to the landlord's written discovery requests.

_____

or using a bootlock or by any other similar method or device." Subdivisions (c) and (d) of that section provide that tenants may recover actual damages, civil penalties of $100 per day with a minimum of $250 per occurrence, and attorney fees for violations of section 789.3.

Civil Code section 1942.4, subdivision (a), provides for a private right of action for unlawful retaliation and habitability violations by a landlord and subdivision (b) permits a tenant to recover her actual damages as well as special damages from $100 to $5,000 and attorney fees. Subdivision (b) of section 1942.4 also permits the court to order the landlord to abate any nuisance or repair any substandard condition of the rental.

7

It attempted to get Kaushansky's input on the discovery responses for the first time the day before the extension expired. While Stonecroft served unverified responses to the landlord three days before they were due, there was no evidence Kaushansky saw or approved those answers. Additionally, Stonecroft failed to produce any documents to the landlord that Kaushansky had provided to it at their initial meetings. The court also concluded Stonecroft offered no dates for Kaushansky's deposition even though she attempted to contact him at least 10 times to discuss her availability.

Next, the court determined Stonecroft breached its fiduciary duty to Kaushansky by violating rule 1.16(d) of the California Rules of Professional Conduct, which requires a lawyer to take steps to avoid reasonably foreseeable prejudice to the rights of the client prior to withdrawing. The court found "Akhidenor essentially browbeat Plaintiff into signing the substitution of attorney form without informing her about the litigation landscape," which consisted of impending discovery cut-off and trial dates, and discovery and sanctions motions. Despite these issues, Stonecroft "took no steps at all to protect Plaintiff from the reasonably foreseeable prejudice arising from Defendants' abrupt disappearance."

The trial court then engaged in an extensive examination of the nature and extent of damages caused by Stonecroft's misconduct but did not make any findings on the collectibility of a hypothetical judgment against the landlord. Judgment was entered against Stonecroft on October 6, 2021, and Stonecroft timely appealed.

## DISCUSSION

Stonecroft does not challenge the trial court's factual findings as to the misconduct underlying the professional negligence and breach of fiduciary duty claims. Nor does it challenge the amount of the damages awarded to Kaushansky. Instead, it raises two principal issues on appeal: (1) Kaushansky failed to prove at trial the collectibility of the judgment against the landlord; and (2) Kaushansky was not entitled to emotional distress damages.

A.   *Whether Kaushansky Could Have Recovered $91,734.29 From the Landlord*

Stonecroft argues Kaushansky did not prove the landlord in the underlying case was solvent and could have paid $91,734.29 in damages on the professional negligence cause of action. As stated, the trial court made no findings in its statement of decision on the landlord's solvency or the collectibility of any judgment against it, both of which go to the causation element of Kaushansky's cause of action for professional negligence.

Kaushansky does not dispute she had the burden to prove collectibility as part of her malpractice action against Stonecroft. She instead argues Stonecroft forfeited this argument because it failed to assert this theory of "nonliability" below, and it failed to present a balanced statement of facts in its opening brief or provide a sufficient record for our review. She further contends we may infer the trial court made a finding of collectibility in its statement of decision and that substantial evidence would support such an implied finding.

1. *Stonecroft May Argue the Evidence Is Insufficient To Support the Judgment for the First Time on Appeal*

Kaushansky asserts Stonecroft forfeited its argument that she failed to prove collectibility because: (1) it did not assert this theory of nonliability at trial and may not do so for the first time on appeal; and (2) it omitted material evidence from the statement of facts and from the record on appeal.

"Generally, points not urged in the trial court cannot be raised on appeal. [Citation.] The contention that a judgment is not supported by substantial evidence, however, is an obvious exception." (*Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, fn. 17 (*Tahoe National Bank*); accord, *First National Bank v. Maryland Casualty Co.* (1912) 162 Cal. 61, 72-73 (*Maryland Casualty Co.*) [challenge to sufficiency of the evidence to support finding on which insurance liability was predicated is not forfeited by lack of objection]; *Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1407 (*Mundy*) [the sufficiency of the evidence can be "raised for the first time on appeal"]; see *In re Brian P.* (2002) 99 Cal.App.4th 616, 623 [challenge to sufficiency of the evidence to support finding of adoptability may be raised for the first time on appeal].)

As more fully explained in the next section, as the plaintiff Kaushansky had the burden to prove that she could have collected the $91,734.29 hypothetical judgment from her landlord. Stonecroft's contention that Kaushansky failed to prove the element of collectibility is a challenge to the sufficiency of Kaushansky's evidence. Longstanding California authority provides that Stonecroft may raise its sufficiency of the evidence argument for the first time on appeal. (See *Tahoe National Bank, supra,* 4 Cal.3d at p. 23, fn. 17; *Maryland Casualty Co.,*

10

*supra,* 162 Cal. at pp. 72-73; *Mundy, supra,* 203 Cal.App.4th at p. 1407.) Kaushansky's arguments to the contrary are unpersuasive.

First, Kaushansky argues Stonecroft may not assert new theories of nonliability on appeal. But the cases on which she relies—*Findleton v. Coyote Valley Band of Pomo Indians* (2018) 27 Cal.App.5th 565, 569, and *Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874—underscore the limits to this rule. *Findleton* explained, generally "[t]he rule applies to defenses as well as theories of liability, and to a 'new theory for or against recovery' of attorney fees." (*Findleton,* at p. 569.) In *Findleton*, the court determined the defendant failed to argue that the scope and effect of attorney fees clauses in contracts between the parties limited the amount of the plaintiff's recovery. (See *ibid.*) Likewise, *Richmond* held that a party may not assert on appeal a new theory of recovery that was not presented to the trial court. (See *Richmond,* at p. 874.) But Stonecroft does not assert a new defense, new theory of liability, or new theory for recovery of damages or attorney fees. Neither *Findleton* nor *Richmond* supports the argument that Stonecroft may not challenge the sufficiency of the evidence for the first time on appeal.

Second, Kaushansky contends Stonecroft's challenges to the sufficiency of the evidence are forfeited because it ignored evidence favorable to her in its opening brief. (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 ["A party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable."].) Kaushansky points to two pieces of "evidence" in the trial record

11

that Stonecroft ignored. One, Stonecroft failed to mention Kaushansky's testimony that the landlord received $11,000,000 in cash from selling the apartment building that was the subject of the underlying landlord-tenant dispute. Two, Stonecroft omitted the fact that the landlord "had insurance and was litigating the matter aggressively (i.e. that they had not simply defaulted) with counsel and ultimately paid Respondent a settlement." We discuss in the next section why this "evidence" does not amount to evidence, substantial or otherwise, sufficient to support an implied finding of collectibility. As a result, Kaushansky has not shown Stonecroft ignored evidence favorable to her that would support an affirmance of the trial court's ruling.

Kaushansky also argues the trial court's decision should be affirmed because Stonecroft failed to present an adequate record for meaningful review. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) But Kaushansky does not identify any portion of the record material to her case missing from the appellate record. The record before us is not so deficient that we cannot review the basis of the trial court's decision. (See e.g., *Jameson,* at p. 609 [no reporter's transcript]; *Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435 [same]; *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 [no underlying briefs or order from which appellant appealed].)

2. *There Is No Substantial Evidence To Support an Implied Finding of Collectibility*

We now turn to Kaushansky's assertion that we may infer the court made a finding of collectibility in its statement of decision and substantial evidence supports the implied factual finding.

12

a. *Standard of review*

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*).) Specifically, "[u]nder the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 48 (*Fladeboe*).) "Sections 632 and 634 [of the Code of Civil Procedure] . . . set forth the means by which to avoid application of these inferences in favor of the judgment. When the court announces its tentative decision, a party may, under section 632, request the court to issue a statement of decision explaining the basis of its determination, and shall specify the issues on which the party is requesting the statement; following such a request, the party may make proposals relating to the contents of the statement. Thereafter, under section 634, the party must state any objection to the statement in order to avoid an implied finding on appeal in favor of the prevailing party." (*Arceneaux,* at p. 1133, fns. omitted.)

Code of Civil Procedure section 634 states if omissions or ambiguities in the statement of decision's factual findings are timely brought to the trial court's attention, "it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." (Code Civ. Proc., § 634; see *SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462 (*SFPP)*; *Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 140.)

13

The appellate court then reviews the implied factual findings under the substantial evidence standard. (See *Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 792-793; *Shenefield v. Kovtun* (2024) 106 Cal.App.5th 925, 933-934; *Fladeboe, supra,* 150 Cal.App.4th at p. 48; *SFPP, supra,* 121 Cal.App.4th at p. 462.)

    b.  *Proof of collectibility in malpractice actions*

"'In civil malpractice cases, the elements of a cause of action for professional negligence are: "(1) the duty of the attorney to use such skill, prudence and diligence as members of the profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage."'" (*Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 356-357 (*Blanks*).)

The causation and damages elements of malpractice require the plaintiff to establish that "but for the defendant's negligent acts or omissions, 'the plaintiff would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred.'" (*Blanks, supra*, 171 Cal.App.4th at p. 357.) "In this sense, collectibility of the hypothetical underlying judgment . . . is a component of the plaintiff's current case relating to damages, as caused by the current negligent attorney defendant." (*Wise v. DLA Piper LLP* (2013) 220 Cal.App.4th 1180, 1191 (*Wise*); accord, *Garretson v. Harold I. Miller* (2002) 99 Cal.App.4th 563, 571 (*Garretson*) ["a plaintiff in a malpractice action must prove he would have obtained a judgment in the underlying action and that the judgment, or some portion of it, could have been collected"]; *DiPalma v.*

14

*Seldman* (1994) 27 Cal.App.4th 1499, 1506-1507 (*DiPalma*) [the plaintiff must "prove that careful management" of the underlying case "would have resulted in a favorable judgment and collection thereof, as there is no damage in the absence of these latter elements"].) "Collectibility is part of the plaintiff's case, and a component of the causation and damages showing, rather than an affirmative defense which the Attorney Defendants must demonstrate."[2] (*Hecht, Solberg, Robinson, Goldberg & Bagley LLP v. Superior Court* (2006) 137 Cal.App.4th 579, 591 (*Hecht*).)

"'The loss of a collectible judgment "by definition means the lost opportunity to collect a money judgment from a solvent [defendant] and is certainly legally sufficient evidence of actual damage."'" (*Wise, supra*, 220 Cal.App.4th at p. 1190.)

---

[2] Were we writing on a blank slate, and had Kaushansky raised the issue on appeal, we might approach the issue of collectibility differently. As the concurrence notes, the Courts of Appeal have placed the burden of proving collectibility on the plaintiff, and the rule warrants revisiting in the appropriate case. Other states have placed the burden of proving collectibility on the attorney defendant as an affirmative defense. (See, e.g., *Kituskie v. Corbman* (1998) 552 Pa. 275, 284-285 [collectibility as part of plaintiff's case places "an unfair burden on the plaintiff . . . . Thus, the minority of courts believe that it is more logical and fair to treat collectibility as an affirmative defense which the defendant/attorney must plead and prove in order to avoid or mitigate the consequences of that attorney's negligent acts"] [collecting cases]; *Teodorescu v. Bushnell, Gage, Reizen & Byington* (1993) 201 Mich. App. 260, 268 [similar]; see also *Measure and elements of damages recoverable for attorney's negligence in preparing or conducting litigation—Twentieth Century cases*, 90 A.L.R. 4th 1033, § 17.) As stated, Kaushansky does not raise the issue, and we leave it for another day.

Collectibility is a fact-intensive inquiry, which "'"looks to the actual circumstances to determine whether the judgment 'would have been collectable.'" [Citation.] *It is not enough for a plaintiff to present speculation or assumptions about an underlying defendant's ability to respond in damages, as opposed to proof of same.*'" (*Wise*, at p. 1191.) On the other hand, absolute certainty is not required. (See *ibid.*) "Admissible evidence on collectibility can include information about the basic solvency of the defendant in the underlying case, as shown by its assets, net worth or available proceeds from investments." (*Hecht, supra,* 137 Cal.App.4th at p. 591.)

When the plaintiff does not introduce evidence from which a trier of fact could conclude, to a reasonable degree of certainty, the judgment would have been collectible, a verdict in favor of the plaintiff must be reversed. (See *McCoy v. Hearst Corp.* (1991) 227 Cal.App.3d 1657, 1660-1661 (*McCoy*); see also *Garretson, supra*, 99 Cal.App.4th at pp. 571-575 [affirming grant of judgment notwithstanding the verdict where no evidence of collectibility introduced]; *Mid-Century Ins. Co. v. Gardner* (1992) 9 Cal.App.4th 1205, 1220 ["The plaintiff was not suffering under any improper court-imposed limitations on its ability to introduce evidence, nor was its litigation theory erroneously based. We may consequently assume it marshalled the best case it could at trial. Under these circumstances, it is proper for us to direct that judgment be entered in favor of the defendant to avoid any additional expense."].)

3.    *Analysis*
Kaushansky contends we may imply a finding by the trial court that $91,734.29 could have been recovered from her

landlord if Stonecroft had reasonably managed the landlord-tenant litigation.  We agree.  There is no dispute Stonecroft failed to raise the issue of collectibility in its objections to the statement of decision.  Under Code of Civil Procedure section 634, we may infer that the trial court decided in favor of Kaushansky as to collectibility.  (See *Arceneaux, supra*, 51 Cal.3d at p. 1133.)

The issue remaining before us is whether any substantial evidence in the record would support this implied finding.  Our review indicates there is no such evidence.  Kaushansky argues there is substantial evidence of her landlord's ability to pay based on her testimony at trial that she alerted Stonecroft by email on March 26, 2014 that she had "'found out from the manager that the building closed today, and the new owner paid over 11 million in cash.'"  The email also asked, "Does the fact that there may not be a loan on the building change anything?  Does it help or hurt, or does it matter?"  Kaushansky also argues that the landlord secured counsel in the landlord-tenant action, "aggressively" litigated the case, and paid Kaushansky a $2,500 settlement as evidence that the landlord could have paid *"some portion"* of her damages.

As an initial matter, the March 26, 2014 email was not admitted into evidence and only served to refresh Kaushansky's recollection about when she learned the building had been sold.  Thus, the email itself held no evidentiary value.  Nor was Kaushansky's reading of the email into the record sufficient to establish anything besides the fact she learned about the sale of the building on March 26, 2014.  (See *Estate of Packer* (1913) 164 Cal. 525, 530 [the party offering a writing to refresh a witness's recollection "has not the right to treat it as evidence"];

17

accord, *People v. Vasquez* (2017) 14 Cal.App.5th 1019, 1036; *Frio v. Superior Court* (1988) 203 Cal.App.3d 1480, 1492.)

Even if Kaushansky's reading of the email into the record demonstrated the landlord received $11 million for the building, this evidence is not enough for the trial court to conclude with a reasonable degree of certainty that the landlord was solvent and had sufficient funds to pay the damages. In particular, Kaushansky does not direct us to any evidence of a mortgage or lack of one to demonstrate the net proceeds of the sale were sufficient to satisfy the hypothetical judgment. Kaushansky's speculation in her email that "there may not be a loan on the building" is not evidence the landlord netted $11 million in the sale. (See *Garretson, supra,* 99 Cal.App.4th at p. 572 [evidence the underlying defendant ran a successful dental practice with 25 employees, owned the office building in which the practice was housed, and was involved in seven or eight other development projects was insufficient to prove solvency because it did not show that he "had any positive net income, net worth, or other means of satisfying a judgment"]; cf. *DiPalma, supra,* 27 Cal.App.4th at p. 1510 [substantial evidence of solvency from testimony of net proceeds from sale of real estate, and real estate owned with accompanying mortgages].)

Nor is the fact that the landlord had the means (either through insurance or otherwise) to retain counsel, litigate the landlord-tenant matter, and pay a $2,500 settlement sufficient to prove collectibility of the $91,734.29 award. (See, e.g., *Hecht, supra,* 137 Cal.App.4th at p. 593 ["It is not enough for the [underlying defendant] in this case to suggest that the record already adequately shows it had some available liability

18

insurance at the relevant times, or that it was in generally good financial standing as a partnership."].)

Having determined there was no evidence, much less substantial evidence, to support an implied finding of collectibility, we consider the disposition of the professional negligence claim.[3]  Stonecroft requests reversal with directions for the trial court to enter judgment in its favor on this cause of action.  Kaushansky urges us to remand for a limited retrial on collectibility.

Kaushansky's authorities do not support remand under the circumstances presented because they do not address the proper resolution of an appeal where the court found no substantial evidence supported the judgment.  (See *Carmel Development Co., Inc. v. Anderson* (2020) 48 Cal.App.5th 492, 521 [trial court error required recalculation of damages]; *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1333-1334 [retrial required as a result of new California Supreme Court authority].)

*McCoy, supra,* 227 Cal.App.3d at pages 1660 to 1661 persuasively addressed whether a plaintiff is entitled to a new trial following a reversal for insufficiency of the evidence on appeal.  *McCoy* observed the general rule is that an unqualified reversal remands the case for new trial, but held that the general rule did not apply where the reversal was solely for insufficient evidence.  It explained, reversal for a new trial "is understandable in the ordinary case of prejudicial error. [Citation.]  In such a situation an error of law has occurred during the proceedings which prevented the appellant from

---

[3]      We need not reach Stonecroft's argument that the damages must be reversed to account for a 40 percent contingency fee.

19

receiving a fair trial.  A reversal under these circumstances informs the trial court that a proper motion for new trial, had it been made, should have been granted.  However, a reversal for insufficiency of the evidence is based on the fact that the plaintiff's evidence does not, as a matter of law, support the plaintiff's cause of action. When a judgment for the plaintiff is reversed for insufficiency of the evidence the appellate court is, in effect, advising the trial court that a nonsuit, directed verdict or [judgment notwithstanding the verdict] should have been entered." (*Ibid.*)

"When the plaintiff has had full and fair opportunity to present the case, and the evidence is insufficient as a matter of law to support plaintiff's cause of action, a judgment for defendant is required and no new trial is ordinarily allowed, save for newly discovered evidence.  [Citations and footnote omitted.] When trial courts grant nonsuits or judgments notwithstanding the verdict based on insufficiency of the evidence and are affirmed on appeal, new trials do not follow as a matter of course. Certainly, where the plaintiff's evidence is insufficient as a matter of law to support a judgment for plaintiff, a reversal with directions to enter judgment for the defendant is proper. [Citations.]  It is anomalous to end the case when the trial court correctly enters a nonsuit or [judgment notwithstanding the verdict] on the ground that the plaintiff has, as a matter of law, failed to prove a cause of action, but to allow plaintiff another trial when the appellate court makes the same determination, since the standard applied by the respective courts is virtually identical." (*McCoy, supra*, 227 Cal.App.3d at p. 1661; cf. *Garretson, supra*, 99 Cal.App.4th at pp. 571-575 [affirming grant

20

of judgment notwithstanding the verdict where no evidence of collectibility introduced].)

*McCoy* has been cited with approval by the California Supreme Court and the Courts of Appeal.  In *Cassista v. Community Foods, Inc.* (1993) 5 Cal.4th 1050, 1066, the high court, citing *McCoy*, held that the plaintiff "[h]aving . . . received a full and fair opportunity to prove her case, . . . is not entitled to a new trial."  (*Cassista*, at p. 1066; see *Farmers & Merchants Trust Co. v. Vanetik* (2019) 33 Cal.App.5th 638, 650 [plaintiff not entitled to a new trial where it had a "full and fair opportunity to make the requisite [damages] showing and failed to do so"]; *Copenbarger v. Morris Cerullo World Evangelism, Inc.* (2018) 29 Cal.App.5th 1, 15-16 ["The [plaintiff] had a full and fair opportunity to present its evidence, but that evidence was insufficient to prove the [plaintiff] incurred damages.  As a result, we reverse the judgment with directions to enter judgment in favor of [defendant]."]; *Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 153 ["If the plaintiff had a 'full and fair opportunity' to present the supporting evidence, and the evidence was insufficient as a matter of law to support a damages award, a reviewing court may strike the award without ordering a retrial."]; *Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 834.)

B.    *Whether Kaushansky May Recover Emotional Distress Damages*

Stonecroft next argues the trial court erred when it awarded Kaushansky $25,000 in damages for emotional distress because California law does not allow emotional distress damages

in civil malpractice cases absent intentional conduct.[4] Stonecroft contends the evidence shows, and the trial court found, that Kaushansky's emotional distress resulted from Stonecroft's negligent, rather than "intentional, reckless, grossly negligent or repeated," conduct.  According to Stonecroft, mere negligence cannot support emotional distress damages even when they are awarded in connection with a breach of fiduciary claim, and not one for malpractice.[5]

      1.     *Governing Law and Standard of Review*

"The elements of a cause of action for breach of fiduciary duty are:  (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. [Citation.]  [¶]  The scope of an attorney's fiduciary duty may be determined as a matter of law based on the Rules of Professional Conduct which, 'together with statutes and general principles relating to other fiduciary relationships, all help define . . . the fiduciary duty which an attorney owes to his [or her] client.'" (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086 (*Stanley*).)  Emotional distress damages may be recoverable if

---

[4]     Stonecroft does not challenge the amount of emotional distress damages awarded.  Nor does it contend Kaushansky did not prove she suffered emotional distress.

[5]     Kaushansky argues Stonecroft forfeited this argument because it did not assert in the trial court that she could not recover emotional distress damages under the breach of fiduciary duty cause of action.  Because Stonecroft's argument raises a question of law—whether a breach of fiduciary duty claim may support emotional distress damages—there is no forfeiture.  (See *In re Sheena K.* (2007) 40 Cal.4th 875, 888-889.)

directly caused by an attorney's conduct in breach of his fiduciary duties.  (See *Knutson v. Foster* (2018) 25 Cal.App.5th 1075, 1096; *Stanley,* at p. 1097; *Betts v. Allstate Ins. Co.* (1984) 154 Cal.App.3d 688, 718 (*Betts*); see also *Enea v. Superior Court* (2005) 132 Cal.App.4th 1559, 1567; *Jahn v. Brickey* (1985) 168 Cal.App.3d 399, 406 [plaintiff was entitled to damages for emotional distress where he "prevailed on the tort theories of fraud and breach of fiduciary relationship"].)

By contrast, "[e]motional distress damages ordinarily are not recoverable in a legal malpractice action if the representation concerned primarily the client's economic interests and the emotional injury derived from an economic loss."  (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 73 (*Ovando*).)  In all respects, "where a plaintiff sufficiently alleges intentional or affirmative misconduct by an attorney or noneconomic injury resulting from an attorney's professional negligence, recovery of emotional distress damages is permitted."  (*Smith v. Superior Court* (1992) 10 Cal.App.4th 1033, 1040.)

"'Whether a plaintiff is "entitled to a particular measure of damages is a question of law subject to de novo review.  [Citations.]  The amount of damages, on the other hand, is a fact question . . . [and] an award of damages will not be disturbed if it is supported by substantial evidence.'"  (*Madani v. Rabinowitz* (2020) 45 Cal.App.5th 602, 610.)  We likewise independently review the meaning of a court order or judgment because it is a question of law.  (See *The Law Firm of Fox & Fox v. Chase Bank, N.A.* (2023) 95 Cal.App.5th 182, 203; *In re Ins. Installment Fee Cases* (2012) 211 Cal.App.4th 1395, 1429.)

2.    *Analysis*

Substantial evidence supports the award of emotional distress damages to Kaushanksy.  Even accepting Stonecroft's assertion that emotional distress damages arising from a breach of fiduciary duty claim require something more than mere negligence, the evidence demonstrates Stonecroft's withdrawal amounted to intentional misconduct.

The court found Stonecroft "essentially browbeat Plaintiff into signing the substitution of attorney form without informing her about the litigation landscape."  The litigation landscape was this:  On the day Stonecroft presented the substitution of attorney form to Kaushansky, she was required to respond to the landlord's motion to compel her deposition and motion for sanctions of $1,660.  Stonecroft withdrew about two weeks before the discovery cut-off date and six weeks before trial, "having conducted no affirmative discovery and botched Plaintiff's responses to the landlord's requests and with a pending discovery and sanctions motion set for hearing on October 16, 2015." Stonecroft withdrew without securing a stipulation to continue the discovery cut-off or the trial date.  The court determined Stonecroft filed a substitution of attorney because it was unlikely the underlying court would grant its withdrawal so close to trial. The court found Stonecroft "took no steps at all to protect Plaintiff from the reasonably foreseeable prejudice arising from Defendants' abrupt disappearance."  Based on these circumstances, the trial court found Stonecroft's withdrawal was "timed to allow them to escape the dire circumstances that Plaintiff had to confront."

Stonecroft's conduct is similar to the law firm's conduct in *Betts, supra,* 154 Cal.App.3d at pages 717 to 718, where the law

24

firm breached its duty to its client by failing to disclose material information and to provide sound advice to its client.  Instead, it actively worked to protect the insurance carrier's interest over those of its client.  This resulted in a judgment against the client that was well in excess of her policy limits.  (*Id.* at p. 696.)  *Betts* upheld the award of emotional damages against the law firm, recognizing "this was not *mere negligence* in failing to properly depose an expert witness but rather it was '*not the type of conduct to be condoned in the legal profession* as far as this court is concerned.'"  (*Id.* at p. 718.)  Stonecroft similarly breached its duty to Kaushansky and actively worked to protect its own interests over those of its client.

Stonecroft does not dispute the above evidence and findings.  It instead relies on the following "key language from the statement of decision" to argue the court found its conduct was not intentional:  "'The Court *declines to hold that Defendants' litigation activities on Plaintiff's behalf were intentional*, reckless, grossly negligent or repeated within the meaning of Rule 1.1 of the Professional Rules of Conduct.'"  We are not persuaded this statement overrides the trial court's factual findings and substantial evidence described above.  We do not read the phrase "litigation activities on Plaintiff's behalf" to encompass Stonecroft's withdrawal.  Indeed, Stonecroft's withdrawal ended its "litigation activities on Plaintiff's behalf," such as they were.

Nor are we persuaded by Stonecroft's authorities that emotional distress damages are not recoverable in attorney malpractice cases.  None of these cases consider whether emotional distress damages are recoverable in a breach of fiduciary duty cause of action.  (See *Ovando, supra,* 159 Cal.App.4th 42; *Camenisch v. Superior Court* (1996)

25

44 Cal.App.4th 1689; *Merenda v. Superior Court* (1992) 3 Cal.App.4th 1, disapproved on a different ground by *Ferguson v. Lieff, Cabraser, Heimann & Bernstein* (2003) 30 Cal.4th 1037, 1053.) Stonecroft acknowledges "a breach of fiduciary duty is a species of tort distinct from a cause of action for professional negligence." (*Stanley, supra*, 35 Cal.App.4th at p. 1086.)

### DISPOSITION

The portion of the judgment awarding $91,734.29 in damages for Kaushansky's professional negligence cause of action is reversed. The judgment is otherwise affirmed. Each party is to bear its own costs on appeal.

MARTINEZ, P. J.

I concur:

STONE, J.

26

SEGAL, J., Concurring.

I agree with the majority that Stonecroft did not forfeit the argument Kaushansky did not prove her judgment against the landlord was collectible and that substantial evidence did not support an implied finding the judgment was collectible. And as the majority points out, Kaushansky does not dispute she had the burden to prove her judgment against the landlord was collectible. Therefore, I concur in the majority's opinion. But in doing so, I write separately to ask: Why does a legal malpractice plaintiff have to prove a judgment in the underlying action would have been collectible? And is that a good rule?

As the majority describes, there are Court of Appeal cases holding the plaintiff in a legal malpractice case has the burden to prove the judgment the plaintiff would have obtained in the underlying action was collectible. (Maj. opn. *ante*, pp. 14-16.) In my view, the rule is legally and economically misguided. I can think of no other area of the law where the plaintiff, to obtain a civil judgment awarding compensatory damages, has to prove not only the elements of the cause of action, but also that the defendant has the financial ability to pay the judgment. Other than entitlement to punitive damages (see *Adams v. Murakami* (1991) 54 Cal.3d 105, 109), the defendant's ability to pay the judgment is irrelevant. (See *Hoffman v. Brandt* (1966) 65 Cal.2d 549, 553 [the defendant's ability to pay the judgment has "no relevance to the issues of the case"]; *People v. Evans* (2019) 39 Cal.App.5th 771, 777 ["In a civil action for compensatory damages, a defendant's wealth is irrelevant to liability."]; *Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1242 ["a party's wealth is generally

irrelevant to the issue of liability"]; *Seimon v. Southern Pac. Transportation Co.* (1977) 67 Cal.App.3d 600, 606 ["questions of liability and the amount of damages in the ordinary personal injury case[1] are to be determined without regard to . . . the ability of the defendant to pay any judgment which might be rendered against him"].)  Indeed, we instruct jurors that they "may not consider the wealth or poverty of any party" and that the "parties' wealth or poverty is not relevant to any of the issues that [they] must decide."  (CACI No. 117.)  The law should require the plaintiff in a legal malpractice case to prove the elements of the underlying case (here, for breach of the implied warranty of habitability, the existence of a material defective condition affecting the premises' habitability, notice to the landlord of the condition within a reasonable time after the tenant's discovery of the condition, the landlord was given a reasonable time to correct the deficiency, and resulting damages (*Erlach v. Sierra Asset Servicing, LLC* (2014) 226 Cal.App.4th 1281, 1297) and for negligence, duty, breach, causation, and damages (*Downey v. City of Riverside* (2024) 16 Cal.5th 539, 547)).  Nothing less, nothing more (e.g., collectibility of the judgment).

The rule is also inconsistent with the Enforcement of Judgments Law, Code of Civil Procedure section 680.010 et seq. Under Code of Civil Procedure sections 683.020 and 683.120, a judgment creditor may enforce a judgment for 10 years, and renew the judgment for another 10 years.  (See *In re Marriage of McIntyre Shayan & Shayan* (2024) 106 Cal.App.5th 76, 85; *Vines*

---

[1]     Both personal injury cases and professional malpractice cases are negligence cases.

2

*v. O'Reilly Auto Enterprises, LLC* (2024) 101 Cal.App.5th 693, 700, fn. 3; *Rubin v. Ross* (2021) 65 Cal.App.5th 153, 161.) Just because the defendant in the underlying case (here, the landlord) may not have the assets to satisfy a judgment at the time the court would have entered it does not mean the defendant will not have assets to satisfy part or all of the judgment at any time during the next 20 years. And the Enforcement of Judgment Law gives judgment creditors a wide variety of tools to find and levy on the assets of judgment debtors, some of which are not available in pretrial discovery in civil cases.[2] Collectibility is a post-judgment issue, not part of the plaintiff's burden of proof at trial.

Finally, the rule requiring the legal malpractice plaintiff to prove the defendant in the underlying case had sufficient assets (at the time of the trial) to satisfy a judgment ignores the economic reality that all judgments, regardless of the ability of the judgment debtor at a particular point in time to pay them, have value. Judgments are assigned, sold, and transferred among judgment creditors, collection agencies, and "creditors'

---

[2] For example, the Enforcement of Judgments Law authorizes the judgment creditor in a judgment debtor examination to conduct "the widest scope for inquiry concerning property and business affairs of the [judgment] debtor." (*Young v. Keele* (1987) 188 Cal.App.3d 1090, 1093; accord, *Lee v. Swansboro Country Property Owners Assn.* (2007) 151 Cal.App.4th 575, 581.) In addition, certain evidentiary privileges, such as the spousal privilege not to testify, do not apply post-judgment. (See Code Civ. Proc., § 708.130.)

3

rights specialists" at a price that reflects various factors, including the age of the judgment, the degree of difficulty of locating the judgment debtor's assets, and the extent to which the judgment debtor has taken actions to protect his or her assets. That the defendant may not have (sufficient) assets to pay a judgment at the time of trial may affect the value of the judgment, but it does not mean the judgment has no value at all. Collection agencies and attorneys representing judgment creditors are very patient beasts and routinely collect on judgments over time.

So how did we get what I think is a bad rule?

The leading and most-cited case for the rule a plaintiff asserting a claim for legal malpractice, unlike any other plaintiff asserting any other kind of claim, must prove he or she would have been able to collect on the underlying judgment is *Campbell v. Magana* (1960) 184 Cal.App.2d 751 (*Campbell*). The plaintiff in *Campbell* suffered personal injuries when an incinerator in a hardware store fell on her foot. (*Id.* at p. 759.) She sued the store, but her attorneys failed to bring the action to trial, and the court dismissed it for failure to prosecute. (*Id.* at p. 760.) The plaintiff sued her attorneys for malpractice, but lost after a court trial. The court in *Campbell* affirmed, holding that, though the attorneys were negligent (a finding not challenged), the plaintiff had not proven damages. (*Id.* at p. 753.) The court in *Campbell* stated "one who establishes malpractice on the part of his attorney in prosecuting or defending a lawsuit must also prove that careful management of it would have resulted in recovery of a favorable judgment and collection of same or, in case of a defense that proper handling would have resulted in a judgment for the client; that there is no damage in the absence of these

4

latter elements, and the burden of proof rests upon the plaintiff to prove recoverability and collectibility of a plaintiff's claim or ability to establish a defense for a client who has been sued." (*Id.* at p. 754.)

A line of cases in the Courts of Appeal have cited *Campbell* for its requirement (again, unique in the law) the plaintiff not only has the burden to prove duty, breach, causation, and damages, but also the collectibility of the underlying judgment. For example, in *DiPalma v. Seldman* (1994) 27 Cal.App.4th 1499 (*DiPalma*) the court cited *Campbell* and stated: "One who establishes malpractice on the part of his or her attorney in *prosecuting a lawsuit* must also prove that careful management of it would have resulted in a favorable judgment and collection thereof, as there is no damage in the absence of these latter elements." (*Id.* at pp. 1506-1507.) In *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820 the court repeated a quote from *Campbell* that "'one who establishes malpractice on the part of his attorney in prosecuting or defending a lawsuit must also prove that careful management of it would have resulted in recovery of a favorable judgment and collection of same.'" (*Id.* at p. 832.)[3] In *Garretson v. Harold I. Miller* (2002) 99 Cal.App.4th 563 (*Garretson*) the court, citing *Campbell* and *DiPalma*, stated "a plaintiff in a malpractice action must prove he would have obtained a judgment in the underlying action and that the judgment, or some portion of it, could have been collected." (*Id.* at p. 571.) In *Hecht, Solberg, Robinson, Goldberg*

---

[3]    *Mattco Forge* was about the plaintiff's burden to prove the case within the case in general, not about collectibility. (See *Mattco Forge, Inc. v. Arthur Young & Co., supra,* 52 Cal.App.4th at pp. 831-837.)

*& Bagley LLP v. Superior Court* (2006) 137 Cal.App.4th 579 (*Hecht*), a case about the discoverability of a nonparty's financial information to use in proving collectibility, the court quoted *Campbell* (this time with italics), cited *Garretson*, and stated: "It is well accepted that 'one who establishes malpractice on the part of his attorney in prosecuting . . . a lawsuit *must also prove* that careful management of it would have resulted in recovery of a favorable judgment *and collection of same . . . .*'" (*Id.* at p. 584.) And in *Wise v. DLA Piper LLP (US)* (2013) 220 Cal.App.4th 1180 the court, citing *Campbell*, *DiPalma*, *Garretson*, and *Hecht*, stated: "The plaintiff in a malpractice action must establish that the underlying judgment lost as the result of the attorney's error could have been collected." (*Id.* at p. 1190.)[4]

All intermediate appellate court roads lead to *Campbell*. (I'll get to the Supreme Court in a bit.) So let's take a closer look at that case. As stated, the plaintiff in *Campbell* was injured when an incinerator in the defendant's store fell on her foot. The attorney for the plaintiff mishandled the case, and the court dismissed it under the five-year rule in the predecessor to Code of Civil Procedure section 583.310. The trial court in *Campbell* found the defendant in the underlying case was not liable to the plaintiff because the defendant had made a reasonable inspection of the store premises (i.e., no breach of the duty of care) and the accident was not foreseeable (i.e., no causation). (*Campbell*, *supra*, 184 Cal.App.2d at pp. 760-762, citing *Palsgraf v. Long Island R.R. Co.* (1928) 248 N.Y. 339.) In other words, the plaintiff in *Campbell* failed to prove by a preponderance of the

---

[4]      *Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, cited by the majority (Maj. opn. *ante*, p. 14), is not a collectibility case.

6

evidence two elements of the case within the case: breach and causation.  Because the defendant was "'not legally liable to [the] plaintiff'" (*Campbell*, at p. 753) in the underlying case, the plaintiff could not prevail in the subsequent legal malpractice case.  Fair enough.  But that's not really a collectibility issue; that's a failure to prove the merits of the case within the case.

So why was the court in *Campbell* discussing collectibility? Because the plaintiff argued on appeal from the judgment in favor of her former attorney that "a lawsuit (good or bad) is a chose in action, hence property," which has "actual value other than that inhering in an existing right to recover" and that, to value such an asset, the court must consider the probability of success of the underlying action, "the settlement practices of the insurance company," the "eminence" of counsel, and "the vigor of their investigation, preparation and presentation . . . ." (*Campbell*, *supra*, 184 Cal.App.2d at pp. 753-745.)  The court in *Campbell* rightly recognized the plaintiff's argument "advances speculative values as a measure of recovery" (*id.* at p. 754); the underlying action had no value because the plaintiff failed to prove it.  And it was in rejecting the plaintiff's argument her (loser) lawsuit still had value that the court in *Campbell* stated the plaintiff's argument violated the rule that a legal malpractice plaintiff must prove he or she would have recovered and collected on a judgment in the underlying case.  (See *id.* at pp. 754-755.)

Thus, *Campbell* does not stand for the proposition a legal malpractice plaintiff must prove the judgment he or she would have obtained was collectible.  *Campbell* is a case about failure to prove the case within the case, not failure to prove the judgment in the case within the case would have been collectible.  And in contrast to the underlying case in *Campbell*, Kaushansky's

7

underlying case had "actual value" (*Campbell*, *supra*, 184 Cal.App.2d at p. 753)—$94,234.29, to be precise— because she proved it in the case within the case.

I recognize the collectibility train has left the legal malpractice station, but I would get off here. We do not have to follow *Campbell* or its progeny. (See *Gamerberg v. 3000 E. 11th St., LLC* (2020) 44 Cal.App.5th 424, 431, fn. 8 ["we are not obligated to follow a decision by a Court of Appeal with which we disagree"]; *Copenbarger v. Morris Cerullo World Evangelism, Inc.* (2018) 29 Cal.App.5th 1, 11 [Court of Appeal is not bound by decisions by other Courts of Appeal]; *Sarti v. Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187, 1193 ["there is no horizontal stare decisis in the California Court of Appeal"].) We do, though, have to follow decisions by the Supreme Court. (See *People v. Perez* (2020) 9 Cal.5th 1, 13 [decisions of the Supreme Court "'are binding upon and must be followed by all the state courts of California'"]; *Loshonkohl v. Kinder* (2003) 109 Cal.App.4th 510, 517 ["As an intermediate appellate court we are bound by decisions of our Supreme Court and we must follow the reasoning found therein."]; *Smith v. Regents of University of California* (1976) 58 Cal.App.3d 397, 400 ["This court is bound by and must follow prior California Supreme Court decisions."].) So: Are there any Supreme Court cases holding the plaintiff in a legal malpractice action must prove the underlying judgment would have been collectible? There are only two candidates, and in my view, neither supports such a requirement.

In *Lally v. Kuster* (1918) 177 Cal. 783 (*Lally*), which the court in *Campbell* discussed extensively (*Campbell*, *supra*, 184 Cal.App.2d at pp. 754-755), the plaintiff hired an attorney to collect on an "overdue note." (*Lally*, *supra*, 177 Cal. at p. 785.)

8

The trial court, however, dismissed the complaint "for lack of diligence in the prosecution thereof, and for lack of merit." (*Ibid.*) The Supreme Court held the plaintiff had proven the defendant's attorney was negligent in handling the case. (*Id.* at p. 787.) The Supreme Court held, however, the plaintiff had not proven the attorney's conduct had caused the plaintiff any damages because the note "was uncollectible, as it had been paid." (*Id.* at pp. 787-788.) The Supreme Court stated: "'In a suit by a client against an attorney for negligence in conducting the collection of a claim, whereby the debt was lost, the burden rests on the former to allege and prove every fact essential to establish such liability. He must allege and prove that the claim was turned over to the attorney for collection; that there was a failure to collect; that this failure was due to the culpable neglect of the attorney; and that, but for such negligence, the debt could, or would, have been collected. Hence, where a claim is alleged to have been lost by an attorney's negligence, in order to recover more than nominal damages it must be shown that it was a valid subsisting debt, and that the debtor was solvent.'" (*Ibid.*)

     *Lally* does not stand for the proposition the legal malpractice plaintiff must prove a judgment in the underlying action would be collectible. In *Lally* the plaintiff failed to prove (in what we would now call the case within the case) causation and damages. The reference to "collection" in *Lally* refers to collecting the debt, not collecting the judgment. The plaintiff in *Lally* lost because she could not prove the elements of the underlying claim; the debt she was suing on was not valid because it had been paid off and was no longer a debt. The Supreme Court in *Lally* required the plaintiff to prove the debt she was suing on was still valid; the Supreme Court did not

9

require the plaintiff to prove that any judgment she would have obtained was collectible.

In *Hastings v Halleck* (1859) 13 Cal. 203 (*Hastings*), decided nine years after California became the 31st state and which the court in *Campbell* cited once (*Campbell*, *supra*, 184 Cal.App.2d at p. 754), the plaintiff was part owner in a building, along with a bank and others. The plaintiff went out of town, but he left two agents "with full power to act for him in matters pertaining to his interest in the property." (*Hastings*, *supra*, 13 Cal. at p. 208.) The plaintiff's agents agreed with the other owners to make improvements to the property, and the agents, on behalf of the plaintiff, executed a promissory note in favor of the bank for the plaintiff's share. The bank eventually sued on the note, and the plaintiff hired the attorney defendants to represent him. After the bank obtained a judgment against the plaintiff, the plaintiff sued his attorneys for malpractice, claiming they failed to assert the bank had made an "unauthorized change in the plans of building," which was a good defense to the bank's action. (*Id.* at pp. 208-209.) The Supreme Court affirmed the judgment in favor of the attorneys in the legal malpractice action, holding "no such defense really existed, or could have been proven," in the underlying action because the plaintiff's agents approved the change in plans. (*Id.* at pp. 210-211.)

*Hastings*, like *Lally*, involved the failure to prove the merits of the underlying action. The Supreme Court in *Hastings* held that, even if the attorney defendants were negligent or guilty of "unskillful management of a cause in which they were retained by plaintiff" (*Hastings*, *supra*, 13 Cal. at p. 207), the plaintiff did not prove, and could not have proven, the attorneys'

10

negligence caused him any damage because the defense he claimed the attorneys should have asserted lacked merit. *Hastings*, which involved a legal malpractice plaintiff who was a defendant (not a plaintiff) in the underlying action, says nothing about requiring the plaintiff to prove a judgment in the underlying case would have been collectible.

Which brings us back to this case. Though I believe *Campbell* and its progeny do not support a rule requiring a legal malpractice plaintiff to prove the underlying judgment would have been collectible, Kaushansky does not argue the rule does not apply to her. Therefore, I concur in the majority's opinion with the exception of section (A)(2)(b) of the Discussion.


SEGAL, J.

11